**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**$38,000.00 IN UNITED STATES
CURRENCY, Defendant,**

**David English and Michael William
English, Claimants-Appellants.**

No. 86–8417.

United States Court of Appeals,
Eleventh Circuit.

May 18, 1987.

Jerome J. Froelich, Jr., Atlanta, Ga., for claimants-appellants.

Robert L. Barr, U.S. Atty., Atlanta, Ga., Amy D. Levin, Asst. U.S. Atty., for plaintiff-appellee.

Before RONEY, Chief Judge, KRAVITCH and EDMONDSON, Circuit Judges.

**KRAVITCH, Circuit Judge:**

This is an appeal from the grant of summary judgment for the government in a forfeiture action pursuant to 21 U.S.C. § 881(a). Under section 881(a) the United States may obtain forfeiture of all moneys furnished or intended to be furnished in exchange for a controlled substance in violation of Title 21 of the United States Code, as well as all proceeds traceable to, and all moneys used or intended to be used to facilitate, such an exchange. 21 U.S.C. § 881(a)(6).

There are, unfortunately, no procedural rules specifically designed to govern section 881 forfeiture actions. Rather than enact rules to govern these actions, Congress borrowed the forfeitures rules of both the customs laws, 19 U.S.C. §§ 1595–1627a, and the Supplemental Rules for Certain Admiralty and Maritime Claims [hereinafter the Supplemental Rules]. 21 U.S.C. § 881(d), Supplemental Rule A. Neither of these procedural rules, however, are directly applicable to section 881 forfeitures.[1] Nor are they easily applied in concert with each other.[2] In fact, the application of these rules to section 881 forfeitures has created a procedural morass—a morass in which the parties to the instant action became hopelessly entangled.

---

1. Numerous courts in fact have held that the Supplemental Rules are unconstitutional when applied to § 881 forfeiture actions. *See United States v. Life Ins. Co. of Virginia Single Premium Whole Life Policy No. 002138373,* 647 F.Supp. 732, 742 (W.D.N.C.1986); *United States v. One Hundred Twenty-Eight Thousand Thirty-Five Dollars ($128,035.00) in United States Currency,* 628 F.Supp. 668, 672–73 (S.D.Ohio 1986) (seizure of property with warrant issued by clerk without prior determination of probable cause is unconstitutional), *appeal dismissed,* 806 F.2d 262 (6th Cir.1986); *United States v. Certain Property Located at 4880 S.E. Dixie Highway,* 612 F.Supp. 1492, 1497–98 (S.D.Fla.1985) (warrant provisions of Supplemental Rule C unconstitutional in § 881 context absent exigent circumstances); *cf. Alyeska Pipeline Serv. Co. v. Bay Ridge,* 509 F.Supp. 1115, 1120–23 (D.Alaska 1981) (warrant provisions of Supplemental Rule C unconstitutional as applied to this admiralty case), *appeal dismissed,* 703 F.2d 381 (9th Cir.1983), *cert. dismissed,* 467 U.S. 1247, 104 S.Ct. 3526, 82 L.Ed.2d 852 (1984).

Other courts have upheld the use of these rules only by reading into the rules probable cause and "exigent circumstances" requirements that are not explicitly stated in them. *See United States v. Pappas,* 613 F.2d 324, 328–29 (1st Cir.1979) (no Supplemental Rule C warrant may issue for seizure of property pursuant to § 881 unless upon probable cause); *Application of Kingsley,* 614 F.Supp. 219, 223–24 (D.Mass.1985) (reading probable cause and detached judicial officer requirements of the fourth amendment into Supplemental Rule C), *appeal dismissed,* 802 F.2d 571 (1st Cir.1986).

2. Consider *United States v. United States Currency in the Amount of $2,857.00,* 754 F.2d 208, 212–13 (7th Cir.1985). Here a forfeiture claimant, upon receipt of notice of the government's intent to forfeit property in a summary action, filed a timely claim pursuant to the customs laws and thereby succeeded in obtaining the right to have his claims resolved in a judicial forfeiture proceeding, only to have his case dismissed because he failed to file a *second* claim, pursuant to Supplemental Rule C(6), once the judicial forfeiture action was commenced.

## I. Background

On May 23, 1984, Paul Markonni, a special agent with the Drug Enforcement Administration (DEA), and a sheriff's deputy of Clayton County, Georgia, seized the defendant $38,000 in United States currency from Darrell Scott Woods in the Atlanta Hartsfield Airport. According to Markonni, Woods told him that the currency belonged to Woods' boss, appellant David English. Woods said that David had asked him to take the money to David's mother in Miami, Florida.

Immediately following the seizure, David called Markonni and, asserting that the currency was his, demanded its return. Subsequent deposition testimony of appellants, however, revealed that the currency belongs to David's brother, appellant Michael English and that Michael had transferred the currency to David, allegedly so that David could send it to their mother in Miami.

On June 25, 1984, the Clayton County District Attorney's office filed a condemnation petition in Clayton County Superior Court. According to David and Michael, they both made verified claims to the money. On April 17, 1985, the state court dismissed the action as not being timely commenced under the Georgia forfeiture laws. According to appellants, they again requested the return of the currency. It was not returned.

In May, 1985, appellants filed a motion pursuant to Rule 41(e), Fed.R.Crim.P., in federal district court demanding return of currency. This motion eventually was dismissed.[3] On July 17, 1985, the United States filed a verified complaint in federal district court seeking forfeiture of the defendant currency pursuant to 21 U.S.C. § 881(a)(6). That day, the government mailed the complaint and a summons to David, who the government allegedly thought owned the currency. The complaint was not accompanied by a warrant to arrest the property as the government had not yet obtained a warrant pursuant to Supplemental Rule C(3). The government did not notify Michael of the forfeiture action. Nor, according to the district court, did the government issue the requisite publication notice of either the seizure or the forfeiture.

The government's complaint states that Agent Markonni seized the defendant $38,000 in the Atlanta airport from a man who identified himself as Darrell Scott Woods. It then recites the probable cause language of section 881. Neither the complaint nor Markonni's accompanying affidavit contain any facts to support the government's claim of probable cause.[4]

---

3. According to appellants, on August 27, 1985, the district court denied the government's motion to dismiss the Rule 41(e) motion. Subsequently, the court reconsidered this order and, on December 5, 1985, dismissed the action on the ground that the government had filed a federal forfeiture complaint. The validity of this order is not before this court.

4. The complaint reads:

The United States of America, plaintiff in this action, shows to the Court the following in support of this complaint for Forfeiture:

1.

This Court has jurisdiction over the claim by virtue of 28 U.S.C. §§ 1345 and 1355.

2.

On or about May 23, 1984, agents of the Drug Enforcement Administration seized the defendant currency at the Atlanta International Airport in Clayton County, Georgia, in the Atlanta Division of this Court.

3.

The defendant currency was seized from the possession of an individual who identified himself as Darrell Scott Woods.

4.

On or about May 23, 1984, the defendant currency was furnished or intended to be furnished in exchange for an illegal controlled substance and/or was proceeds traceable to an illegal exchange for a controlled substance and/or was money intended to be used to facilitate a violation of Title 21 of the United States Code, all in violation of Title 21, U.S.C. § 881(a).

5.

Agents of the Drug Enforcement Administration had probable cause at the time of the seizure to believe that the defendant currency was furnished or intended to be furnished in exchange for an illegal controlled substance and/or was proceeds traceable to an illegal exchange for a controlled substance and/or was money intended to be used to facilitate a violation of Title 21 of the United States Code, all in violation of Title 21, U.S.C. § 881(a).

6.

The defendant currency is subject to forfeiture under the provisions of Title 21, U.S.C. § 881.

The summons states that David must file an answer to the complaint within twenty days and that failure to do so will result in the entry of summary judgment against him. The summons does not specify which procedural rules govern the action. The acknowledgment and receipt accompanying the summons and complaint state that they were served pursuant to Rule 4(c)(2)(C)(ii) of the Federal Rules of Civil Procedure. The Supplemental Rules are not mentioned.

On July 30, David filed both a claim to the currency and a motion to dismiss the government's complaint. In his claim David demanded that the currency "be returned to me immediately"; he did not, however, specify his relationship to the currency.

Approximately one week after David filed his motion to dismiss, and almost three weeks after the government filed its forfeiture complaint, the government obtained from the clerk of the court a warrant for the arrest of the currency. This warrant was sent by certified mail to David's attorney, who also was, and is, Michael's attorney. The warrant states that David is required to file a claim within ten days of service of the complaint,[5] as opposed to service of the warrant, and that

David must file his answer within twenty days after filing his claim.

On August 22, 1985, the district court denied David's motion to dismiss the government's complaint as being without merit. The court dismissed David's claim that the government's complaint lacks the requisite factual particularity, along with several other claims, in a footnote.[6] The court did not mention the Supplemental Rules.

On September 5, 1985, David filed an answer to the forfeiture complaint.[7] On November 13, 1985, Michael filed a claim to the defendant currency; he filed an answer approximately two weeks later. In his claim, Michael alleged that he had borrowed the currency and therefore it belongs to him. He asserted, however, that both he and David have an interest in the currency because he had transferred the currency to David.

On March 17, 1986, the government filed a motion for summary judgment alleging that neither David nor Michael have standing. The district court granted the motion on May 6, 1986, concluding that neither claimant has standing under Supplemental

---

WHEREFORE, the United States prays:

(1) That due process issue for seizure of the defendant currency;

(2) That all persons having any interest in the defendant currency appear and show cause why the forfeiture should not be decreed;

(3) That an order issue forfeiting the defendant currency to the government;

(4) That plaintiff be awarded the costs of this action; and

(5) That the court award such other and further relief as it deems just and proper.

The affidavit reads:

I, Paul J. Markonni, Special Agent for the Drug Enforcement Administration, have read the foregoing complaint for forfeiture and state that the contents are true to the best of my knowledge, information and belief.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

**5.** The warrant specifically states that David must file his claim within ten days of service of the complaint, or within such additional time as the court might allow.

**6.** In his motion, David alleged that the complaint should be dismissed because (1) the government's fourteen month delay in filing its federal forfeiture complaint is improper and unconstitutional, (2) the currency was seized in violation of his fourth amendment rights, (3) the complaint fails to state probable cause, (4) the complaint lacks any factual basis for forfeiture and therefore the claimant cannot properly answer it and (5) the issues in the complaint have been decided by the Clayton County Supreme Court and therefore are "res judicata." The court considered and rejected David's claims of constitutionally impermissible delay and "res judicata" in the body of its opinion. The other claims were dismissed in a footnote as being without merit.

**7.** In his answer, David alleged that (1) the court lacks jurisdiction over the forfeiture action because appellants rule 41(e) motion was pending at the time the complaint was filed, (2) the complaint fails to state a cause of action, (3) David's fourth amendment rights were violated by the government's seizure of the defendant, and (4) the complaint fails to state probable cause for seizure.

Rule C(6).[8] The district court found, based in part on deposition testimony of appellants, that Michael owns the currency and that David had been acting as Michael's bailee. Neither side contests this finding. The court then concluded that David lacks standing because David failed to specify in his claim that he was acting as a bailee for Michael, as required under Supplemental Rule C(6). The court dismissed Michael's claim on the ground that it was not timely filed under Supplemental Rule C(6). The court reasoned that, although the government had not satisfied the notice requirements of Supplemental Rule C(4), Michael was obligated to file a claim pursuant to Supplemental Rule C(6) within ten days of July 24, 1985—the date Michael received actual notice of the forfeiture complaint through his and David's attorney. The court therefore concluded that the claim Michael filed in November was untimely under Supplemental Rule C(6).

Having dismissed the claims of the only two claimants to the property, the court granted summary judgment for the government.[9] David appeals the denial of his motion to dismiss. Both David and Michael appeal the grant of summary judgment.

## II. Standing as a Threshold Issue

Appellants argue on appeal that it was improper for the district court to consider standing prior to determining whether the government has the requisite probable cause to obtain forfeiture of the defendant currency. Although we reject appellants' claim that probable cause, not standing, is the threshold issue, we reverse the district court on the standing issue because both appellants have satisfied the standing requirements applicable to them.

### A. Article III Standing

■ There are two different forms of standing at issue in this case: Article III standing and statutory standing. It is well established that in order to contest a forfeiture, a claimant first must demonstrate a sufficient interest in the property to give him Article III standing; otherwise, there is no "case or controversy," in the constitutional sense, capable of adjudication in the federal courts. *United States v. One 18th Century Columbian Monstrance,* 802 F.2d 837, 838 (5th Cir.1986) (denying petition for rehearing and rehearing en banc); *see United States v. Five Hundred Thousand Dollars,* 730 F.2d 1437, 1439 (11th Cir.1984) (per curiam); *United States v. Three Hundred Sixty-Four Thousand Nine Hundred Sixty Dollars ($364,960.00) in United States Currency,* 661 F.2d 319, 326 (5th Cir. Unit B Nov.1981);[10] *United States v. One 1977 36 Foot Cigarette Ocean Racer,* 624 F.Supp. 290, 294 (S.D.Fla.1985) (standing is a threshold issue). Thus, contrary to appellants' argument, unless they have Article III standing,[11] federal courts lack jurisdiction to consider their claims, including their claim that the government did not have the requisite probable cause to seize the defendant property.[12] *See Five Hundred Thousand Dollars,* 730 F.2d at 1439.

**8.** Supplemental Rule C(6) provides in pertinent part that:

> The claimant of property that is the subject of an action in rem shall file his claim within 10 days after process has been executed, or within such additional time as may be allowed by the court, and shall serve his answer within 20 days after the filing of the claim. The claim shall be verified on oath or solemn affirmation, and shall state the interest in the property by virtue of which the claimant demands its restitution and the right to defend the action. If the claim is made on behalf of the person entitled to possession by an agent, bailee, or attorney, it shall state that he is duly authorized to make the claim. ...

**9.** The district court did not consider the impact of its finding that the government had not is-

sued the requisite publication notice on the validity of its decision to grant summary judgment on the ground that there were no valid claimants to the property.

**10.** The Eleventh Circuit, in *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33 (11th Cir.1982), adopted as precedent decisions of the former Fifth Circuit, Unit B, rendered after September 30, 1981.

**11.** The claimant bears the burden of establishing standing. *United States v. Five Hundred Thousand Dollars,* 730 F.2d 1437, 1439 (11th Cir.1984) (per curiam).

**12.** Appellants' claim appears to be grounded on a misunderstanding of the essential nature of a forfeiture action. A forfeiture proceeding is not

There can be no doubt that Michael, as owner of the currency, has Article III standing, and the government does not argue otherwise. The government, however, does argue that David does not have Article III standing to contest this forfeiture because David neither owns nor was in actual possession of the currency at the time it was seized. We disagree.

■ A claimant need not own the property in order to have standing to contest its forfeiture; a lesser property interest, such as a possessory interest, is sufficient for standing. *See United States v. One Hundred Twenty-Two Thousand Forty-Three Dollars ($122,043.00) in United States Currency,* 792 F.2d 1470, 1473 (9th Cir.1986); *United States v. Four Million, Two Hundred Fifty-Five Thousand,* 762 F.2d 895, 907 (11th Cir.1985), *cert. denied,* — U.S. ——, 106 S.Ct. 795, 88 L.Ed.2d 772 (1986); *United States v. 1982 Sanger 24' Spectra Boat,* 738 F.2d 1043, 1046–47 (9th Cir.1984); *Five Hundred Thousand Dollars,* 730 F.2d at 1439. David has such a possessory interest.

■ It is uncontested that David is the bailee of the defendant currency for Michael. As a bailee, David has a possessory interest in the bailed currency, *see Dunavant Enterprises, Inc. v. Strachan Shipping Co.,* 730 F.2d 665, 668 (11th Cir.1984) (under common law a bailee assumes possession of the property); *Baldwin v. Hill,* 315 F.2d 738, 742 (6th Cir.1963), and consequently may assert a claim to the currency against anyone, other than the bailor, who interferes with that interest. *See Reliance Ins. Co. v. Al E. & C., Ltd.,* 539 F.2d 1101, 1105 (7th Cir.1976); *Mitchell Coal Co. v. United Mine Workers,* 313 F.2d 78, 79 (6th Cir.1963); *Cincinnati, New Orleans & Texas Pac. Ry. Co. v. Hilley,* 121 Ga.App. 196, 173 S.E.2d 242, 245 (1970). As bailee,

therefore, David has Article III standing to contest the forfeiture of the currency. *See Five Hundred Thousand Dollars,* 730 F.2d at 1439 (standing extends to those with a possessory interest); *see also* Supplemental Rule C(6) (permitting bailees to file claims); *cf. $364,960.00,* 661 F.2d at 326–27 (assignee who obtains his interest pursuant to valid assignment by party with ownership interest has standing to contest forfeiture).

■ Moreover, although David was not in actual possession of the currency, he was in constructive possession of the currency when it was seized, in that the currency was seized from David's employee, Woods, while Woods was transporting it to Miami at David's request. Constructive possession such as this is sufficient to confer upon David Article III standing. *See United States v. $3,799.00 in United States Currency,* 684 F.2d 674, 678 (10th Cir.1982) (claimant who "had no actual or constructive possession" of the currency lacked standing).

## B. Statutory Standing

■ In addition to establishing Article III standing, claimants also must satisfy applicable statutory standing requirements. Thus, contrary to appellants' claims, statutory standing also is a threshold issue. *See United States v. Beechcraft Queen Airplane,* 789 F.2d 627, 630 (8th Cir.1986); *United States v. United States Currency in the Amount of $2,857.00,* 754 F.2d 208, 212–13 (7th Cir.1985).

■ Unlike the omnipresent Article III standing requirements, however, statutory standing requirements, such as those of the Supplemental Rules, are implicated only when, and as, the statute itself provides. In particular, until a claimant has a

an action against the claimant but rather is an *in rem* action against the seized property brought under the fiction that the property itself is guilty of facilitating the crime. *See Calero-Toldeo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 680–84, 94 S.Ct. 2080, 2090–92, 40 L.Ed.2d 452 (1974). Therefore, although the government bears the initial burden of proving probable cause, it does not bear that burden with respect to a given claimant unless the claimant

makes a valid claim that he has a legally cognizable interest in the property that will be injured if the property is forfeited to the government. It is this claim of injury that confers upon the claimant the requisite "case or controversy" standing to contest the forfeiture. *See United States v. One 18th Century Columbian Monstrance,* 802 F.2d 837, 838 (5th Cir.1986) (denying petition for both rehearing and for rehearing en banc).

duty to establish statutory standing, the fact that the claimant has not yet done so is not grounds for dismissal.

### III. Does Supplemental Rule C(6) Apply?

The Supplemental Rules govern judicial forfeiture proceedings and establish the statutory standing requirements for these actions.[13] Supplemental Rule A; Supplemental Rule C(6); *see $2,857.00*, 754 F.2d at 211, 212–13.

■ Under Supplemental Rule C(6), a claimant must file a verified claim within ten days of execution of process and an answer within twenty days of filing the claim. The rule explicitly states, however, that a claimant "shall file his claim ... *after* process has been executed...." Supplemental Rule C(6) (emphasis added). Based on this language, courts have ruled that a claimant *may not* satisfy the rule with a claim filed prior to execution of process. *$2,857.00*, 754 F.2d at 213. Similarly, we conclude that claimants *need not* file a claim pursuant to Supplemental Rule C(6) until process has been executed. *Cf.*

*United States v. One 1977 Cadillac Coupe DeVille*, 644 F.2d 500, 501 (5th Cir. Unit B May 1981) (statutes providing for forfeitures must be strictly construed).[14]

■ Moreover, given that Supplemental Rule C(6) provides both that the claim must be filed after execution of process and that the answer must be filed after the filing of the claim, we conclude that the answer need be filed pursuant to Supplemental Rule C(6) only after process is executed. *Cf. id.* at 501. In sum, we hold that claimants need not satisfy the standing requirements of the Supplemental Rule C(6) unless, and until, the government has executed process pursuant to Supplemental Rule C(3).

Supplemental Rule C(3) governs execution of process in judicial forfeiture actions. Under the rule, in order to execute process the government must file a verified complaint with the clerk of the court pursuant to Supplemental Rule C(2) and obtain from the clerk a warrant for the arrest of the property. This warrant is then served by the United States marshal.[15] Process is

**13.** Section 881(d) provides that § 881 forfeiture proceedings are to be governed by the provisions for seizure, summary and judicial forfeiture, and condemnation of property applicable to violations of the customs laws. 21 U.S.C. § 881(d); *Vance v. United States*, 676 F.2d 183, 185 (5th Cir.1982). Although the customs laws contain rules to govern summary and administrative forfeiture actions, 19 U.S.C. §§ 1609, 1612, 1615, the customs laws do not detail what procedures should govern judicial forfeiture actions. They simply state that judicial forfeiture proceedings shall proceed "in the manner prescribed by law." 19 U.S.C. § 1608; *see* 19 U.S.C. § 1610. Therefore, apparently by default, judicial forfeitures are governed by the Supplemental Rules. *See* Supplemental Rule A; *$2,857.00*, 754 F.2d at 212–13.

**14.** The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

**15.** Under the language of Supplemental Rule C(3), service should be made upon the property itself. The rule, however, is designed to enable the government to seize property not already in its possession. The precise application of the rule is unclear in situations, such as this one, where the government already has possession of

the property it purportedly is attempting to seize pursuant to Supplemental Rule C(3).

In fact, the issue of how to apply the Supplemental Rules to § 881 forfeiture actions commenced after a warrantless seizure of property is further complicated by the fact that § 881 forfeitures also are governed by the customs laws, 19 U.S.C. §§ 1595–1627a. *See* 21 U.S.C. § 881(d). Both the customs laws and the regulations governing § 881 forfeitures provide that, following the seizure of property, the government custodian of the property "*shall* cause notice of the seizure and of the intention to forfeit ... to be published once a week for at least three successive weeks in a newspaper of general circulation in the judicial district in which the proceeding for forfeiture is brought." 21 C.F.R. § 1316.76 (1984) (emphasis added); 19 U.S.C. § 1607 (1984); *see* 21 C.F.R. § 1316.75 (delineating what must be contained in the notice); 19 C.F.R. § 162.45 (same). In addition, the government also must send written notice of the seizure, "together with information on the applicable procedures to each party who appears to have an interest in the seized article." 19 U.S.C. § 1607; *see* 19 C.F.R. § 162.31. These provisions raise the question, which we do not decide, whether it is permissible for the government to bring a § 881 judicial forfeiture action prior to filing notice pursuant to 21 C.F.R. § 1316.75 and 19 U.S.C. § 1607, as it did here.

executed once, but not until, this warrant is served. *See* Supplemental Rule C(3).

■ The government in the instant action did not properly execute process.[16] In particular, the government's service of its complaint was not an execution of process pursuant to Supplemental Rule C(3) since the complaint was not a warrant issued by a clerk pursuant to Supplemental Rule C(3) nor was it accompanied by a Supplemental Rule C(3) warrant. Accordingly, we reject the district court's conclusions both that David was obligated to satisfy Supplemental Rule C(6) as of July 23, 1985, when the government served him with its forfeiture complaint, and that Michael was similarly obligated as of the following day when he learned of the complaint.

■ In fact, we conclude that neither David's claim nor his motion to dismiss need satisfy Supplemental Rule C(6) because when he filed them the government had not yet executed process. *Cf. Vance v. United States,* 676 F.2d 183, 187 (5th Cir. 1982) (disregarding statutory standing and

proceeding to the merits because the government failed to give proper notice in the underlying summary forfeiture action). We base this holding in part on our conclusion that David was not required to wait to file his claim and motion to dismiss until the government executed process. *Compare with $2,857.00,* 754 F.2d at 213. The government had served upon David a summons and an acknowledgment which incorrectly stated that David had twenty days as of service of the summons and the complaint (as opposed to execution of process) to file an answer. Given this improper notice, David was justified in filing when he did.[17] *See United States v. One 1979 Oldsmobile-Cutlass Supreme,* 589 F.Supp. 477, 478 (N.D.Ga.1984) (claimant filed claim form with Customs Service pursuant to instructions contained on the form the Service had sent her); *United States v. One 1967 Mooney M20–F Aircraft,* 597 F.Supp. 531, 532 (N.D.Ga.1983) (notice of seizure claimant received from DEA told him to file a claim with the DEA).[18]

The statutes and regulations cited employ the word "shall" and do not state that this notice is necessary only when the government wishes to institute administrative forfeiture proceedings. Moreover, they state that the government shall begin judicial condemnation proceedings *upon* the filing by a claimant of the requisite claim and bond. 21 C.F.R. § 1316.78; 19 U.S.C. § 1608.

**16.** Moreover, we observe that in this case the government was required under Supplemental Rule C(4) to cause public notice of the action and arrest to be given in a newspaper of general circulation in the district, designated by order of the court. Under the rule, this notice must specify the time within which an answer is required to be filed, as provided in Supplemental Rule C(6).

The district court found that the government failed to give this notice. In fact, despite the government's claim that it published a notice in the *Fulton County Daily Record,* the district court found that the government never issued *any* publication notice of the forfeiture action because the government never submitted evidence to prove that the notice had been published. While we do not address the validity of this finding, we observe that even if the notice had been published in the *Fulton County Daily Report* on August 15, 1985, the government cannot make even a colorable claim that this notice satisfies Supplemental Rule C(4). The government asserts that its notice is sufficient because

the *Fulton County Daily Record* is an "official legal organ of Fulton County." Appellees Brief at 15–16. This is hardly enough. Under the requirements of Supplemental Rule C(4): (1) the government should have had a court order designating where the government must issue its notice, (2) the publication should have been a paper of general circulation in the northern district of Georgia, not simply the "legal organ of Fulton County," and (3) the notice should have specified the time within which claimants were required to file an answer pursuant to Supplemental Rule C(6).

**17.** The notice in the government's summons and complaint is consistent with the statement in Rule 12(a), Fed.R.Civ.P., that "[a] defendant shall serve his answer within 20 days after service of the summons and complaint upon him...." Forfeiture actions such as this, however, come under an exception to this rule. *See* Fed.R.Civ.P. 12(a); Supplemental Rule C(6).

**18.** Compare these cases with *United States v. Beechcraft Queen Airplane,* 789 F.2d 627, 630 (8th Cir.1986) which distinguished *United States v. One 1979 Oldsmobile-Cutlass Supreme,* 589 F.Supp. 477, 478 (N.D.Ga.1984) and *United States v. 1967 Mooney M20–F Aircraft,* 597 F.Supp. 531, 532 (N.D.Ga.1983) on the ground that in *Beechcraft* the claimant's failure to follow Supplemental Rule C(6) was his own fault. Also compare with, *$2,857.00,* 754 F.2d at 212–13 (claimant's failure to file claim own fault).

■ Nor are we inclined to hold David to the strictures of Supplemental Rule C(6) simply because the government eventually obtained a warrant. Courts consistently have required claimants to follow the language of the Supplemental Rules to the letter. *See, e.g., Beechcraft Queen Airplane,* 789 F.2d at 630; *$2,857.00,* 754 F.2d at 212–13; *United States v. One 1978 Piper Navajo PA–31, Aircraft,* 748 F.2d 316, 318–19 (5th Cir.1984). We see no reason to apply a less stringent standard to the government when it seeks forfeiture. If anything, the burden on the government to adhere to the procedural rules should be heavier than on claimants. Forfeitures are not favored in the law; strict compliance with the letter of the law by those seeking forfeiture must be required. *See United States v. One 1936 Model Ford V–8 De Luxe Coach,* 307 U.S. 219, 226, 59 S.Ct. 861, 865, 83 L.Ed. 1249 (1939); *United States v. One 1976 Ford F–150 Pick-Up,* 769 F.2d 525, 527 (8th Cir.1985); *United States v. One 1957 Rockwell Aero Commander 680 Aircraft,* 671 F.2d 414, 417 (10th Cir.1982); *One 1977 Cadillac,* 644 F.2d at 501.[19]

Applying the plain language of the Supplemental Rules, we conclude that the government never properly executed process. David, therefore, was not obligated to satisfy the statutory standing requirements of Supplemental Rule C(6). Similarly, we conclude that because of the government's procedural failings, Michael was not required to satisfy Supplemental Rule C(6). Accordingly, we reverse the district court's grant of summary judgment to the government.

## IV. Dismissal of the Complaint

Were we considering only the district court's grant of summary judgment, we would remand to permit appellants to file claims under Supplemental Rule C(6). Here, however, we also have before us David's appeal of the district court's denial of his motion to dismiss the complaint, the merits of which we must now consider.[20]

In both his motion to dismiss and on appeal, David argues that the government failed in its complaint to provide the requisite factual basis for its allegation that it has probable cause for forfeiture. We agree and conclude that, pursuant to Supplemental Rule E(2), the government's complaint must be dismissed.[21]

**19.** Moreover, even were we tempted in some cases to permit the government to remedy a past procedural error by obtaining a warrant, we are not so inclined in the instant case. For, here, not only was the warrant filed weeks after service of the complaint, but the warrant also contained incorrect information. In particular, the warrant stated that David must file his claim within ten days of service of the *complaint,* as opposed to ten days from execution of process. The warrant therefore exacerbated the damage done by both the government's failure to obtain the warrant in the first place and its inclusion of incorrect information in its summons and acknowledgment.

**20.** The Federal Rules of Civil Procedure [hereinafter the Federal Rules] are applicable to actions commenced under the Supplemental Rules except when inconsistent with those rules. Supplemental Rule A; *See United States v. $39,000 in Canadian Currency,* 801 F.2d 1210, 1216 (10th Cir.1986). Rule 12 of the Federal Rules provides that a party may file a motion to strike a complaint prior to filing an answer. Fed.R. Civ.P. 12(f). A claim that the complaint does not state sufficient facts to permit the party to frame a responsive pleading is a valid basis for a motion to strike. Fed.R.Civ.P. 12(e). While

under the Federal Rules a party wishing to file such a motion does so after making a motion for a more definite statement, *id.,* the standard of particularity for complaints filed pursuant to the Supplemental Rules is more stringent than is that of the Federal Rules. *See* Supplemental Rule E(2); *$39,000,* 801 F.2d at 1216 & n. 3; 12 C. Wright & A. Miller, Federal Practice & Procedure § 3242 (1973). In particular, the Supplemental Rules provide that the complaint must be sufficiently specific that a motion for a more definite statement is unnecessary. *See* Supplemental Rule E(2). Accordingly, construing David's motion to dismiss as a motion to strike, we conclude that the motion was properly filed as David was not required to first make a motion for a more definite statement.

**21.** In his initial brief David argues that both the complaint and warrant are invalid under the fourth amendment because the warrant was not reviewed by either a magistrate or a detached judicial officer and neither the complaint nor the warrant contain sufficient facts to permit a detached judicial officer to make an independent determination of probable cause. David did not make a claim under Supplemental Rule E in his initial brief. We decide this case on this statutory ground, however, in order to

Supplemental Rule E(2) establishes the standard of factual particularity for forfeiture complaints filed pursuant to Supplemental Rule C. The rule provides that a forfeiture complaint must "state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, *without moving for a more definite statement,* to commence an investigation of the facts and to frame a responsive pleading." Supplemental Rule E(2)(a) (emphasis added). The rule contains no exceptions to this requirement.

Courts interpreting the rule have held that Supplemental Rule E(2) means precisely what it says: the government's complaint must contain sufficient facts to enable claimants to commence an investigation of the facts initially alleged and to respond with some degree of particularity. *United States v. $39,000 in Canadian Currency,* 801 F.2d 1210, 1216–19 (10th Cir.1986); *United States v. $18,000.00 in United States Currency,* No. C86–478A, slip op. at 5–6 (N.D.Ga. Aug. 5, 1986).

■ We agree and hold that a section 881(a) forfeiture complaint must allege sufficient facts to provide a reasonable belief that the property is subject to forfeiture: in particular, that the government has probable cause to believe that a substantial connection exists between the property to be forfeited and the exchange of a controlled substance.[22] *See $39,000,* 801 F.2d at 1219, 1220; *$18,000.00,* No. C86–478A, slip op. at 6–7; *United States v. A Parcel of Real Property Commonly Known As:*

*3400–3410 W. 16th St.,* 636 F.Supp. 142, 146–47 (N.D.Ill.1986); *see also Riverway Co. v. Spivey Marine and Harbor Serv. Co.,* 598 F.Supp. 909, 913 (S.D.Ill.1984) (under Supplemental Rule E(2) the complaint must evince a reasonable belief that the claim has merit); *cf. Four Million, Two Hundred Fifty-Five Thousand,* 762 F.2d at 903 (defining probable cause); *$364,960,* 661 F.2d at 323 (same).

■ Applying these principles to the instant action, we conclude that the government's complaint must be dismissed pursuant to Supplemental Rule E(2). The complaint is completely devoid of factual support for the government's allegation that it has probable cause for forfeiture under section 881.[23] Despite the clear language of Supplemental Rule E(2), the complaint contains not even a whiff of evidence to suggest that the currency is in any way linked to the exchange of a controlled substance. In fact, the only facts presented in the complaint are that the DEA seized the currency from Darrell Scott Woods in the Atlanta Airport on May 23, 1984. This statement does not provide claimants with notice of the basis for the government's contention that it has the requisite probable cause to believe that a substantial connection exists between the currency and the exchange of a controlled substance. The complaint therefore must be dismissed.[24] *See $39,000,* 801 F.2d at 1220.

We are not unsympathetic to the government's strong desire to eradicate drug trafficking: we recognize that illegal drugs

---

avoid unnecessarily deciding the constitutional issues David has raised. *See Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 341, 56 S.Ct. 466, 480, 80 L.Ed. 688 (1936) (J. Brandeis, concurring) (federal courts should not decide the constitutionality of Congressional statutes "unless obligated to do so in the proper performance of [their] judicial function").

**22.** Probable cause in this context refers to "reasonable grounds for belief supported by less than prima facie proof but more than mere suspicion." *United States v. Four Million, Two Hundred Fifty-Five Thousand,* 762 F.2d 895, 903 (11th Cir.1985) (defining probable cause), *cert. denied,* —— U.S. ——, 106 S.Ct. 795, 88 L.Ed.2d 772 (1986); *United States v. Three Hundred Sixty-Four Thousand Nine Hundred Sixty Dollars*

*($364,960.00) in United States Currency,* 661 F.2d 319, 323 (5th Cir. Unit B Nov. 1981) (same); *United States v. One 1978 Chevrolet Impala,* 614 F.2d 983, 984 (5th Cir.1980).

**23.** Moreover, the affidavit in support of the complaint does not state *any* facts at all. *See* note 4, *supra.*

**24.** In his motion to dismiss David made numerous other allegations. *See* note 6, *supra.* Given our holding that the complaint must be dismissed, we need not, and therefore do not, consider whether the district court properly denied these other claims. In addition, because we grant the motion to dismiss, we need not consider the claims raised by either David or Michael in their answers to the complaint.

pose a tremendous threat to the integrity of our system of government. We must not forget, however, that at the core of this system lies the Constitution, with its guarantees of individuals' rights. We cannot permit these rights to become fatalities of the government's war on drugs.

Accordingly, we REVERSE both orders of the district court and REMAND this case to the district court to dismiss the government's complaint. The dismissal is without prejudice, and the district court is free to give leave to amend under Fed.R. Civ.P. 15 or treat the dismissal in any other way that would have been appropriate, had it initially dismissed the complaint.