**UNITED STATES of America, Plaintiff,**

v.

**UNITED STATES CURRENCY IN the AMOUNT OF TWENTY–FOUR THOUSAND ONE HUNDRED SEVENTY DOLLARS ($24,170.00) MORE OR LESS, Defendant.**

No. CV–91–0529.

United States District Court, E.D. New York.

Feb. 19, 1993.

Elliot M. Schachner, Asst. U.S. Atty., Brooklyn, NY, for plaintiff.

Rommy Amaechi, pro se.

Okechukwu Ogu Oguledo, pro se.

Rex Hayford, pro se.

MEMORANDUM AND ORDER

GLASSER, District Judge:

The government brings this motion pursuant to Rule C(6) of the Supplemental Rules for Certain Admiralty and Maritime Proceedings (the "Supplemental Rules") and pursuant to Rule 37(b) of the Federal Rules of Civil Procedure, seeking dismissal of the

---

claims and answers filed by claimants Rommy Amaechi, Okechukwu Ogu Oguledo and Rex Hayford ("claimants" collectively) and seeking forfeiture of the defendant currency. More specifically, the government argues that although the claimants filed timely claims under Rule C(6), their subsequent dilatory behavior—failure to respond to interrogatories and to comply with discovery orders—justifies this court in striking the claims and answer and entitles the United States to a judgment of forfeiture. Claimants have not filed any response to date.[1] For the reasons discussed below, the government's motions are hereby granted.

## FACTS

The background of the seizure of the United States currency in this case is relatively simple. In September of 1990, agents of the Drug Enforcement Administration ("DEA") seized the defendant currency (in the amount of $24,170.00) from a hotel room in Elmhurst, Queens. (Declaration of Elliot M. Schachner, Assistant United States Attorney, ¶ 1) At the time of the seizure, claimant Hayford told the DEA Agents that he intended to use the currency to purchase cosmetics from Saba Distributing Inc. ("Saba"), which he claimed did business only in cash. (Schachner Decl. ¶ 2) In December of 1990, the principal of Saba, Zeki Sabbagh, was indicted in the United States District Court for the District of Maryland on several narcotics-related counts. The Fourth Superseding Indictment against Sabbagh alleged that he sold "cosmetics and other commodities to ... heroin smugglers and drug traffickers for currency, which had been obtained as drug proceeds." (Schachner Decl. Exh. 1) A jury subsequently convicted Sabbagh on all counts, and he now awaits sentencing. (Schachner Decl. ¶ 3)

The United States commenced this forfeiture action against the defendant funds in February of 1991 pursuant to 21 U.S.C. § 881(a). On March 12, 1991, the United States mailed to each of the claimants copies of the Verified Complaint in Rem as well as Plaintiff's First Set of Interrogatories. (Schachner Decl. Exh. 2) In April of 1991, the claimants timely filed claims and a motion to dismiss the complaint; this court issued an Order denying the motion on May 13, 1991. Claimants then filed and served their original answer on May 31, 1991 and their answer to the Amended Verified Complaint in Rem on or about October 11, 1991. (Schachner Decl. ¶ 4) However, claimants have *never* served or filed any answers to the interrogatories.

At the request of claimants' former counsel, the United States consented to six extensions of time for claimants to serve their responses to the interrogatories. The last of these extensions expired on November 29, 1991. (Schachner Decl. ¶ 5) By letter to the court dated November 27, 1991, claimants' counsel requested a stay of discovery for six months on the grounds that he was unable to contact his clients. (Schachner Decl. Exh. 3) The United States opposed this motion and moved for an order directing claimants to respond to the interrogatories and to appear for depositions. (Schachner Decl. Exh. 4) On December 16, 1991, Chief Magistrate Judge Chrein held a conference and signed an order granting claimants a stay of all discovery until April 30, 1992. (Schachner Decl. ¶ 6 & Exh. 5)

In May of 1992, the government telephoned former claimants' counsel to determine if claimants were prepared to proceed with discovery. In response, counsel stated that he was still unable to contact any of his clients and was continuing his attempts to do so. In June of 1992, counsel moved to be relieved from continuing his representation of claimants on grounds that he had not been able to contact them; that motion was granted on July 7, 1992. (Schachner Decl. Exh. 6)

By order dated July 10, 1992, Chief Magistrate Judge Chrein directed that discovery

---

1. In fact, as the factual discussion below indicates, claimants have not contacted the government, their former counsel or this court for well over a year. More specifically, by letter of November 27, 1991, claimants' former counsel informed the court that he had not been able to contact Hayford and Oguledo since the Summer of 1991. While someone at Amaechi's residence signed for his letters in October of 1991, more recent letters to him were returned to sender and marked "addressee unknown."

be completed by September 30, 1992, and scheduled a conference for that same date to resolve "any application the Government may choose to make in connection with any claimants' failure to provide discovery." (Schachner Decl. ¶ 9 & Exh. 7) None of the claimants appeared either personally or by counsel at the September 30 conference. Magistrate Judge Chrein directed the government to prepare for his consideration and signature an order requiring claimants to provide discovery; he also directed the United States to seek relief from any violation of that order from this court.

On October 2, 1992, Magistrate Judge Chrein signed the discovery order which required:

(1) all three of the claimants to serve responses to the interrogatories on or before December 15, 1992;

(2) Claimant Amaechi to appear for a deposition on January 4, 1993;

(3) Claimant Oguledo to appear for a deposition on January 5, 1993; and

(4) Claimant Hayford to appear for a deposition on January 6, 1993.

(Schachner Decl. ¶ 11 & Exh. 8) On October 6, the government mailed copies of the discovery order to each of the claimants at their respective last known addresses, as set forth in the papers served by their prior counsel in support of his motion to be relieved. The mailing to claimant Amaechi was returned to the United States Attorney's Office in this district with the notation "addressee unknown"; the other two letters were not returned, but it is unlikely that they reached the claimants. (See footnote 1) A second attempt to contact claimants by mail (at the same addresses) occurred on December 14, 1992; at that time, the government notified claimants that it would seek a decree of forfeiture of the defendant currency if no response were forthcoming.

To date, none of the claimants have served answers to the interrogatories, appeared for depositions, or provided any other form of discovery. In fact, they have not communicated personally with the United States at any time during this litigation; the last contact through counsel occurred when claimants' former counsel withdrew in July of 1992. (Schachner Decl. ¶ 13) To the best of the government's knowledge, claimants are the only persons or entities to have an interest in all or part of the defendant funds, and claimants are neither infants, nor incompetent nor engaged in military service. (Schachner Decl. ¶ 14).

## DISCUSSION

▇ Supplemental Rule C(6), entitled "Claim and Answer; Interrogatories," provides in pertinent part:

The claimant of property that is the subject of an action in rem shall file a claim within 10 days after process has been executed, or within such additional time as may be allowed by the court, and shall serve an answer within 20 days after filing the claim.... At the time of answering the claimant shall also serve answers to any interrogatories served with the complaint....

There is no question that claimants in this case complied with that portion of Rule C(6) which requires filing a verified claim and answer in a timely fashion. However, the Rule also explicitly states that claimants must serve answers to any interrogatories when they serve their answer to the complaint. The government argues that the claimants' failure to comply with this interrogatory requirement deprives them of "statutory standing" to contest forfeiture of the defendant currency and therefore should result in this court striking the claims and answer that claimants filed.

It is widely accepted that Rule C(6) "establish[es] the statutory standing requirements" for *in rem* forfeiture proceedings. *See, e.g., United States v. 38,000.00 in United States Currency,* 816 F.2d 1538, 1545–46 (11th Cir. 1987) (stating that failure to comply with requirements of Rule C(6) deprives claimant of standing to contest forfeiture action). However, most cases to hold that a claimant lacks standing to contest a forfeiture have involved claimants who failed to file a timely or verified claim or answer. *See, e.g. United States v. Eng,* 951 F.2d 461, 467–68 (2d Cir. 1991) (holding that potential claimant who failed to file a claim under C(6) lacked standing to challenge forfeiture of defendant real

property); *United States v. Beechcraft Queen Airplane,* 789 F.2d 627, 629–30 (8th Cir.1986) (affirming district court's dismissal of answer and judgment of forfeiture because claimant who filed timely answer failed to file claim); *United States v. A Parcel of Real Property Known as 134–22 222nd Street,* 724 F.Supp. 1081, 1083 (E.D.N.Y.1988) (granting government's motion to dismiss claims filed after Rule C(6)'s deadline). The courts in these cases declined to vacate orders of default and forfeiture because the claimants who moved to vacate had not followed the clear directives of Rule C(6). The question for this court is whether claimants' failure to file interrogatory responses—as opposed to timely or proper claims or answers—justifies striking otherwise proper claims under Rule C(6).

Only one case—*United States v. One 1987 BMW,* Civil No. 91–285–S, 1992 WL 467320 (D.N.H. May 12, 1992)—has addressed this precise issue. In that action to forfeit an automobile and certain currency under 21 U.S.C. § 881, the United States served interrogatories on the claimant at the time that it served the complaint. Although the claimant served and filed a timely claim and answer to the complaint, he responded to only two of the ninety-nine interrogatories. Finding that this failure to adhere to the mandates of Rule C(6) was intentional, the court granted the government's motion to strike the claim and ordered the defendant property forfeited to the United States. The *One 1987 BMW* court also held that the claimant's failure to respond to the remainder of the interrogatories deprived him of standing to contest the forfeiture.

This case presents an even more compelling situation for striking the claims than that presented in *One 1987 BMW.* Claimants in this action were served with interrogatories in March of 1991, at the same time that they were served with the complaint. Although they moved to dismiss the complaint and subsequently filed an answer in May of 1991—when the motion to dismiss was denied—they never responded to the interrogatories despite receiving extensions until into November of 1991. Admittedly, by the end of this period, claimants' former counsel was experiencing difficulty contacting his clients in order to gather information to enable him to fashion responses to the interrogatories. However, as former counsel's November 1991 letter to this court makes clear, claimants were aware of their responsibility to submit responses to the interrogatories. While the interrogatories requested extensive information from claimants, the requests appear related to the forfeiture action and seek information about which claimants would have personal knowledge or access.

■ When presented with adequate grounds, a court may excuse strict compliance with the dictates of Supplemental Rule C(6). In *Mercado v. United States Customs Service,* 873 F.3d 641, 644–45 (2d Cir.1989), a civil forfeiture action, the Second Circuit distinguished what it called "standing"—referring to article III standing—from Rule C(6)'s procedural requirements. Although the *Mercado* court reaffirmed the fact that claimants are expected to comply with the directives of the Supplemental Rules, *id.* at 645, its analysis suggests—and the Second Circuit later held—that a court may waive the statutory standing requirements of Rule C(6) upon a proper showing. *See United States v. Premises and Real Property at 4492 South Livonia Road,* 889 F.2d 1258 (2d Cir.1989) (holding that claimant who demonstrates sufficient interest in property by filing motion papers may be excused from technical noncompliance with rules governing filing of claims); *cf. United States v. Bank of New York,* 1991 WL 495709, *1–2, 1991 U.S.Dist. LEXIS 18269, *2–6 (E.D.N.Y.1991) (Sifton, J.); *United States v. One White 1989 Chevrolet Corvette Convertible,* 1990 WL 164672, *4–5, 1990 U.S.Dist. LEXIS 14234, *10–13 (E.D.N.Y.1990) (Spatt, J.).

However, absence from a jurisdiction alone does not satisfy the requisite standard for excusing noncompliance with the Supplemental Rule in question. In *United States v. Eng,* 951 F.2d 461 (2d Cir.1991), the government moved for a default judgment against certain real and personal property which it sought to forfeit as proceeds of narcotics trafficking. Defendant, detained in Hong Kong but indicted for alleged management of a continuing criminal heroin enterprise, moved for release of the property and an

indefinite stay of proceedings pending the conclusion of his criminal case. Judge Raggi granted the government's motion for default, and the Second Circuit affirmed, holding that Eng's failure to file a timely claim and answer deprived him of standing to contest the forfeiture proceeding and that his active opposition to extradition disentitled him from being heard in the civil proceedings, even to request a stay. *Id.* at 464–68. While Eng's absence from the jurisdiction resulted from his desire to avoid criminal proceedings, the case suggests that an absent claimant still must satisfy Rule C(6)'s requirements to have statutory standing.

As the cases above indicate, claimants must comply strictly with the statutory requirements of Rule C(6) absent some justification. In this case, although the interrogatories were complicated, claimants' subsequent (and present) unavailability does not justify their failure to respond. In sum, since claimants have not complied with the interrogatory requirement of Rule C(6), this court follows *One 1987 BMW* and strikes claimants' claims and answer.

■ The government argues that Rule 37(b)(2) of the Federal Rules of Civil Procedure justifies entering a decree of forfeiture as an appropriate sanction for claimants' dilatory conduct and failure to obey court discovery orders. Rule 37(b)(2) provides, in relevant part, that "[i]f a party . . . fails to obey an order to provide or permit discovery, . . . the court in which the action is pending may make such orders in regard to the failure as are just." In fact, Rule 37(b)(2)(C) expressly grants the court the power to "render[ ] a judgment by default against the disobedient party." Although this sanction is extreme, in certain cases it is necessary in order to "penalize those whose conduct may be deemed to warrant such a sanction" and "to deter those who might be tempted to such conduct in the absence of such a deterrent." *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642–43, 96 S.Ct. 2778, 2780–81, 49 L.Ed.2d 747 (1976).

By remaining unavailable for well over a year, claimants in this case have caused substantial delay. While claimants probably were *not* aware of the discovery orders issued by Magistrate Chrein—and therefore cannot be characterized as directly failing to obey those orders—they certainly should have been aware of the fact that their lack of contact with the court, the government *and* their counsel would interfere with their claims and the action as a whole. Where, as here, parties have engaged in a "continuing [pattern] of dilatory conduct" during the course of a proceeding, sanction under Rule 37(b)(2) is appropriate. *See, e.g., United States Freight Company v. Penn Central Co.*, 716 F.2d 954, 955 (2d Cir.1983) (per curiam).

## CONCLUSION

For the reasons provided above, the government is entitled to dismissal of claimants' claims and answer. There appear to be no other active claims on the defendant property. As claimants have ignored orders of this court and delayed this action for more than a year by virtue of their absence, the government's motion for a judgment of forfeiture pursuant to 21 U.S.C. § 881(a)(6) is hereby granted. This forfeiture is effected pursuant to the attached Decree of Forfeiture and Order of Delivery submitted by the government.

SO ORDERED.