[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

———————

No. 05-10543

———————

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 24, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-20518 CV-WMH

VIA MAT INTERNATIONAL SOUTH AMERICA LTD.,

Plaintiff-Appellant,

versus

UNITED STATES OF AMERICA,

Defendant-Appellee.

———————

Appeal from the United States District Court
for the Southern District of Florida

———————

**(April 24, 2006)**

Before DUBINA and KRAVITCH, Circuit Judges, STROM*, District Judge.

DUBINA, Circuit Judge:

_____
*Honorable Lyle E. Strom, United States District Judge for the District of Nebraska, sitting by designation.

Appellant air carrier, Via Mat International South America Ltd. ("Via Mat"), brought this action against the United States seeking the return of monetary instruments that were seized from its possession by the United States Bureau of Customs and Border Protection ("Customs"). Customs settled administratively with the owner of the instruments that Via Mat was transporting, but did not respond to Via Mat's timely demand for institution of a judicial forfeiture proceeding to determine the legality of the underlying seizure. The district court granted the Government's Motion to Dismiss, holding that Via Mat lacked statutory standing and that the matter was rendered moot by virtue of Customs' settlement with the owner of the instruments. Via Mat appeals, and, for the reasons that follow, we reverse the district court's order.

## I. BACKGROUND

In or about July 2003, Gales Casa Cambiaria d/b/a Lespan ("Lespan"), a currency exchange house in Montevideo, Uruguay, contracted with Prosegur Transportadora de Caudales, S.A., who in turn hired Via Mat to transport and insure a shipment of bank notes valued at $2,757,975 from Montevideo to London, England, via Miami, Florida. When the notes arrived in Miami, Customs agents seized them pursuant to 31 U.S.C. § 5317(c)(2) based on Via Mat's failure

to file Customs Form 4790 as required by 31 U.S.C. § 5316.[1]  It is uncontested that Lespan is the true owner of these notes, and the Government does not allege the monetary instruments are the proceeds of drug dealing or other criminal activity.

Customs notified both Via Mat and Lespan of the seizure and invited both of them to file an Election of Proceedings CAFRA[2] Form, which gives claimants the choice to proceed with a contest of the seizure administratively or judicially. Both Lespan and Via Mat responded to the notice and each filed a claim to the seized assets, a CAFRA Form that elected to proceed administratively, and a Petition for Early Release.[3]  Customs informed Via Mat that it would grant the Petition for Early Release contingent upon: (1) Customs retaining $500,000 pending the outcome of the administrative process, (2) the execution of a hold harmless agreement, and (3) the execution of an agreement containing a waiver of the right to judicial review of Customs' final administrative determination.  Via

---

[1]Section 5316 requires that a person file Form 4790 when transporting monetary instruments of an amount greater than $10,000 to the United States from a foreign country.  Via Mat argues that it was not in violation of 31 U.S.C. § 5316 because it was not transporting the monetary instruments "to" the United States, because Miami was not the final destination; instead, it was transporting the property "through" the United States to another country.  Thus, Via Mat argues the seizure was unlawful.  The propriety of the initial seizure is not currently before this court, however, and we express no opinion on the merits of Via Mat's argument on this issue.

[2]"CAFRA" refers to the Civil Assets Forfeiture Reform Act.

[3]"Early Release" is a procedure used by Customs in conjunction with the elective administrative resolution process whereby Customs returns all of the seized property, less an amount it determines to be the likely maximum penalty, pending a final administrative decision.

Mat, however, was unwilling to waive its right to judicial review of the proceedings because it wished to contest the legality of the seizure, and, additionally, because Lespan would not drop an action it had initiated against Via Mat in Uruguay for damages arising from the seizure.[4]  Accordingly, Via Mat rejected Customs' proposal in writing and requested that the matter be referred for judicial forfeiture.

Although Customs inadvertently failed to notify Lespan of the early release offer, Lespan learned of the offer and Via Mat's rejection thereto and notified Customs that it would agree to the terms and proceed administratively. Consequently, Customs released the funds, less $500,000, to Lespan and began administrative proceedings to dispose of the matter.  Before the administrative proceedings concluded, Lespan and Via Mat resolved the Uruguay action with a settlement agreement whereby Via Mat agreed to reimburse Lespan for the $500,000 retained by Customs, plus other costs.  In return, Lespan agreed to forward to Via Mat any money eventually recovered from Customs, and to support Via Mat in any claim it might bring against Customs.  Ultimately, on May 20, 2004, Customs issued its final administrative decision and released $420,000 to

---

[4]Lespan sought to recover from Via Mat the amount retained by Customs and the decrease in value of the notes while they were held by Customs, plus other costs.

4

Lespan, retaining $80,000 as payment in lieu of forfeiture of the property initially seized. Lespan then turned over this $420,000 to Via Mat.

The issue currently before this court arose when the Government, following Via Mat's request for judicial forfeiture, failed to institute judicial forfeiture proceedings within 90 days as required by 18 U.S.C. § 983. Instead, Customs continued with the administrative process, dealing only with Lespan. The forfeiture procedure mandated in this situation is set forth in 18 U.S.C. § 983(a), in relevant part:

> (2)(A) Any person claiming property seized in a nonjudicial civil forfeiture proceeding under a civil forfeiture statute may file a claim with the appropriate official after the seizure.
> . . .
> (3)(A) Not later than 90 days after a claim has been filed, the Government shall file a complaint for forfeiture in the manner set forth in the Supplemental Rules for Certain Admiralty and Maritime Claims or return the property pending the filing of a complaint . . . .
> (B) If the Government does not–
> > (i) file a complaint for forfeiture or return the property, in accordance with subparagraph (A) . . . the Government shall promptly release the property pursuant to regulations promulgated by the Attorney General, and may not take any further action to effect the civil forfeiture of such property in connection with the underlying offense.
> . . .
> (4)(A) In any case in which the Government files in the appropriate United States district court a complaint for forfeiture of property, any person claiming an interest in the seized property may file a claim asserting such person's interest in the property in the manner set forth in the Supplemental Rules for Certain Admiralty and Maritime Claims . . . .

If the Government institutes a judicial forfeiture proceeding by filing a claim for forfeiture of property in the district court, the Supplemental Rules for Certain Admiralty and Maritime Claims [hereinafter the Supplemental Rules] are invoked. Supplemental Rule C provides, in pertinent part:

> (6)(a)  In an in rem forfeiture action for violation of a federal statute:
> (i)  a person who asserts an interest in or right against the property that is the subject of the action must file a verified statement identifying the interest or right . . .
> (ii)  an agent, bailee, or attorney must state the authority to file a statement of interest in or right against the property on behalf of another . . . .

Via Mat filed the complaint at issue here contending that because the Government failed to comply with the 18 U.S.C. § 983(a)(3)(A) requirement that it institute judicial forfeiture proceedings upon request of a claimant, 18 U.S.C. § 983(a)(3)(B) mandates that the Government promptly release the property.  The district court granted the Government's Motion to Dismiss, ruling that (1) Via Mat does not have standing in the present action because it can not satisfy the statutory standing requirement of Supplemental Rule C(6)(a)(ii), notwithstanding the Government's failure to file a judicial forfeiture complaint; and (2) even if Via Mat has statutory standing, the issue is moot because Lespan, as owner of the

6

property, agreed to settle the matter administratively and, as a result, there is no outstanding injury to Via Mat.

## II. ISSUES

1. Does a party seeking the return of seized property have to satisfy statutory standing requirements under the Supplemental Rules when the Government has not instituted a judicial forfeiture action by filing a claim for forfeiture in the district court?

2. Is a claim for return of seized property moot when the owner of the property has settled with the Government but the party who had possession at the time of seizure filed an unanswered claim for the return of the property and is still liable to the owner for any property that remains in the Government's possession?

## III. STANDARD OF REVIEW

"[T]his court reviews standing *de novo*." *Eng'g Contractors Ass'n of S. Fla., Inc. v. Metro. Dade County*, 122 F.3d 895, 903 (11th Cir. 1997). Mootness is a question of law, which this court reviews *de novo*. *See United States v. Logal*, 106 F.3d 1547, 1551 (11th Cir. 1997) ("[W]hether this court should dismiss the appeal as moot . . . present[s a] question[] of law subject to *de novo* review."); *Ala. Disabilities Advocacy Program v. J.S. Tarwater Developmental Center*, 97

F.3d 492, 496 (11th Cir. 1996) (employing plenary standard of review on question of mootness).

## IV.  DISCUSSION

### A.  Article III Standing

We begin by addressing standing under Article III of the Constitution, as it is a threshold matter required for a claim to be considered by the federal courts. *See Warth v. Seldin*, 422 U.S. 490, 498 (1975) (Standing is "the threshold question in every federal case, determining the power of the court to entertain the suit."). At the heart of Article III standing is the existence of an injury, not ownership. Ownership of property that has been seized can be evidence of the existence of an injury that is direct enough to confer standing, but ownership is not required; non-owners, such as bailees or those with possessory interests, can also have injuries resulting from the seizure of property that are sufficient to establish standing.[5] *See United States v. $38,000.00 in U.S. Currency*, 816 F.2d 1538, 1544 (11th Cir. 1987) ("A claimant need not own the property in order to have standing to contest its forfeiture; a lesser property interest, such as a possessory interest, is sufficient

---

[5]However, not just any purported injury or interest is sufficient– "straw owners" and persons who might have unknowingly been in possession of property that is seized do not necessarily suffer an injury that is sufficient to demonstrate standing.  *See United States v. Cambio Exacto,* 166 F.3d 522, 527-28 (2nd Cir. 1999).

for standing. . . . As a bailee, [the plaintiff] has a possessory interest in the bailed currency . . . [and] has Article III standing to contest the forfeiture of the currency."); *United States v. $260,242.00 in U.S. Currency*, 919 F.2d 686, 687-88 (11th Cir. 1990) ("[A] possessory interest generally is constitutionally sufficient for claims in forfeiture actions.").

The economic harm to a party with a possessory interest in seized property, imposed by virtue of its liability to the owner of such property, can constitute a palpable injury sufficient to confer standing under Article III. The Second Circuit, in *United States v. Cambio Exacto*, 166 F.3d 522, 527-28 (2nd Cir. 1999), held that two money transmitters had standing to contest the forfeiture of money seized out of their accounts by the Government due to crimes allegedly committed by their clients.[6] The court found that the companies "had a financial stake in the funds because they had a liability to their customers in an amount equal to the forfeited funds." *Id.* at 528. "Substantial economic harm is plainly the type of injury for which parties may seek redress in federal court." *Id.* The injury was "the direct result of 'putatively illegal' [G]overnmental action in the form of an

---

[6]*Cambio Exacto* differs from the case at bar because the actual owners of the funds did not separately settle with the Government and leave the money transmitters to seek their own relief. However, this analysis is still applicable to Via Mat, who incurred a loss similar to the claimants in *Cambio Exacto* and is threatened with being shut out of the court system due to standing.

9

allegedly unlawful forfeiture. This injury would be redressed by a successful challenge to the forfeiture. Article III does not require more." *Id.* (citations omitted).

Though Via Mat was not the owner of the monetary instruments, it had a possessory interest in the property when it was seized by the Government. Via Mat then suffered a direct, substantial economic injury due to its liability to Lespan for any of the property the Government did not return to the owner. Via Mat's injury is real and direct, and is sufficient under Article III.

B.  Statutory Standing

Unlike the constitutional standing requirements that apply to all cases brought in federal courts, "statutory standing requirements, such as those of the Supplemental Rules, are implicated only when, and as, the statute itself provides." *$38,000.00*, 816 F.2d at 1544. This court has found that the statutory standing requirements of Supplemental Rule C(6) are only invoked after the Government has executed judicial process, thus "claimants need not satisfy the standing requirements of the Supplemental Rule C(6) unless, and until, the [G]overnment has executed process pursuant to [the statute]."[7] *Id.* at 1545. This court reasoned

---

[7]The forfeiture statute at issue in *$38,000* was 21 U.S.C. § 881, which concerns drug-related forfeitures. However, the legal analysis applicable to that forfeiture statute is substantially similar to the forfeiture statute in this case, 18 U.S.C. § 983(a).

10

that claimants are consistently required to follow the language of the forfeiture procedure to the letter, and "[i]f anything, the burden on the [G]overnment to adhere to the procedural rules should be heavier than on claimants.  Forfeitures are not favored in the law; strict compliance with the letter of the law by those seeking forfeiture must be required."  *Id.* at 1547.

Via Mat filed a valid claim and demanded that the Government follow the judicial forfeiture process, which triggered the Government's duty to file a complaint in the district court.  The plain language of the statute is clear: "Not later than 90 days after a claim has been filed, the Government shall file a complaint for forfeiture . . . If the Government does not . . . the Government shall promptly release the property . . . ."  18 U.S.C. § 983(a)(3).  Statutory standing under Rule C(6) is not inherent to all forfeiture actions; it is only required if specifically invoked by statute and required by procedural rules that are strictly construed.  The Government ignored Via Mat's validly-submitted claim and did not file a complaint for forfeiture within 90 days, thus the provisions of  § 983(a)(4)(A), which would have required Via Mat to file a claim conforming to Supplemental Rule C(6), were never invoked.  Accordingly, Via Mat need not satisfy Rule C(6) statutory standing.

C. <u>Mootness</u>

11

The district court alternatively held that Via Mat's claim was moot, reasoning that Via Mat's only interest in the action was derivative of Lespan's interest. Thus, Lespan settling with the Government extinguished Via Mat's claim, despite its remaining liability to Lespan for any retained property and its attempts to contest the lawfulness of the seizure. However, we conclude that Via Mat's claim is not moot under three views. First, Via Mat's injury is still existing, substantial, and real, as explained *supra*, and it is easily redressible by the district court. Customs' administrative resolution of Lespan's claim did not extinguish Via Mat's claim, it merely reduced it to a definite injury based on the amount of the property that Customs did not return to Lespan. Second, declaring the issue moot would deprive Via Mat of due process. By ignoring the valid claim filed by Via Mat and refusing to file a complaint with the court, the Government unilaterally chose with which party it would deal, depriving Via Mat of its chance to defend its interest in the property and contest the forfeiture in the district court. Once any person files a claim, the Government is required to either initiate a judicial action or return the property. 18 U.S.C. § 983(a)(3). The statute is clear on this point; Via Mat has a right to judicial process.

Third, the essential nature of forfeiture actions is such that the cause of action is not rendered moot by the Government settling with one potential

claimant. "A forfeiture proceeding is not an action against the claimant but rather is an *in rem* action against the seized property brought under the fiction that the property itself is guilty of facilitating the crime." *$38,000.00*, 816 F.2d at 1543 n.12. By proceeding administratively with Lespan, the Government merely settled with one party that had a claim to the money it was holding; it did not dispose of all possible claimants and did not judicially prosecute the underlying crime of which the property was accused. As long as the Government is still holding some of the property, it must give due process to parties claiming a right to have that property released. Via Mat, as a claimant to the property, had a right to insist that the Government file a judicial forfeiture complaint to contest the legality of the forfeiture. The Government still has possession of the property, thus Via Mat's injury is real and its claim is not moot.

## V. CONCLUSION

For the foregoing reasons, we reverse the district court's order granting the defendant's Motion to Dismiss and remand this case for further proceedings consistent with this opinion.

**REVERSED and REMANDED.**

13