[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

Nos. 05-13661, 05-13955, 05-14012

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 18, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 98-00099-CR-ORL-19-DAB

UNITED STATES OF AMERICA,

Plaintiffs-Appellee,

versus

SHOLAM WEISS,

Defendant.

THE STONEWELL CORPORATION,

Claimant-Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

**(October 18, 2006)**

Before EDMONDSON, BIRCH and ALARCÓN,[*] Circuit Judges.

ALARCÓN, Circuit Judge:

_____

[*]Honorable Arthur L. Alarcón, United States Circuit Judge for the Ninth Circuit, sitting by designation.

The Stonewell Corporation ("Stonewell") appeals from 1) the Summary Judgment in favor of the Government, 2) the Second Amended Preliminary Order of Forfeiture, and 3) the Final Order of Forfeiture, giving the United States the proceeds of the sale of a property known as the Center Mall ("the Center Mall property"). These orders effectuate the District Court's order on Stonewell's petition filed pursuant to 18 U.S.C. § 1963 (2000).

The District Court determined that Stonewell lacked standing to claim an interest in a mortgage on the Center Mall property ("Center Mall mortgage") and was otherwise "unable to establish any of the criteria necessary to defeat the Government's entitlement under the Second Amended Preliminary Order of Forfeiture." Thus, the District Court concluded that the Government was entitled to "all right, title, and interest of Defendant, Sholam Weiss, in the proceeds of the sale of the Center Mall located in Monmouth County, New Jersey," free and clear of any claim of Stonewell. The District Court ordered the forfeiture of the Center Mall mortgage as a substitute asset pursuant to 18 U.S.C. § 1963(m) (2000). We agree with the District Court that Stonewell lacks standing to claim an interest in the mortgage on the Center Mall property. We dismiss this appeal for lack of jurisdiction.

## I

Sholam Weiss, Michael Blutrich, Lyle Pfeffer, and others schemed to defraud the National Heritage Life Insurance Company ("NHLIC") of millions of dollars and to use the stolen funds to commit further frauds. The conspiracy began around 1990 and was carried out for nearly a decade. Part of the scheme involved laundering money stolen from NHLIC through a series of property purchases and resales to corporations set up by nominees of Mr. Weiss.[1] Stonewell was one such nominee who, through its officer, director and shareholder, Richard Gladstone, knowingly became involved in Mr. Weiss's money laundering scheme.

## A

On April 29, 1998, a grand jury in the Middle District of Florida indicted Mr. Weiss on charges of violating the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 (2000), and other criminal statutes, in relation to the looting of NHLIC. On November 2, 1999, following a jury trial, Mr. Weiss and his co-defendants were convicted on charges of violating 18 U.S.C.

---

[1]A person cannot have a vested interest in property if he is found to be acting as a nominee for persons whose property is subject to the forfeiture. *Braxton v. United States*, 858 F.2d 650, 652-53 (11th Cir. 1988). Nominee "connotes the delegation of authority to the nominee in a representative or nominal capacity only, and does not connote the transfer or assignment to the nominee of any property in, or ownership of, the rights of the person nominating him." *Id*. at 653 n.6.

§ 1962, and other criminal statutes.[2] The indictment charged that Mr. Weiss used funds stolen from NHLIC to purchase an asset known as the Center Mall mortgage and hid the mortgage by assigning it to persons acting as Mr. Weiss's nominees. The indictment sought forfeiture of the proceeds of Mr. Weiss's looting under 18 U.S.C. § 1963. The jury rendered a special verdict of forfeiture for several items of property, including the sum of $3.1 million which Mr. Weiss had stolen and used to buy the Center Mall mortgage. The special verdict also forfeited Mr. Weiss's interest in several companies, including Center Mall, Inc., Center Point Mall, Inc., Jasper Properties, Inc., and the Stonewell Corporation.

**B**

As a result of the special verdict, the District Court for the Middle District of Florida filed a preliminary order of forfeiture on November 2, 1999. An amended order was filed on May 12, 2000. The order forfeited, *inter alia*, "all right, title and interest of defendant, Sholam Weiss" in "Stonewell Corp." and $3.1 million which "sum represents the amount of money involved in [the Center Mall transaction] . . . that was obtained by defendant or that the defendant could

_____

[2]Mr. Weiss's co-defendants were Keith Pound, Jan R. Schneiderman, Richard B. Herman, Isack Rosenberg, Nadine Allen, Robert Gorski, Richard Langer, South Star Management, Inc., Ados Equities, Inc., National Housing Exchange, Inc., APX Mortgage Services, Inc., Resource Asset Management, Inc., National Workout Specialist, Inc., and Sprite Equities, Inc.

4

reasonably foresee would be obtained by other members of the . . . conspiracy, during the course of the criminal conduct."

On April 5, 2000, Mr. Gladstone filed a petition of innocent owner in the Middle District of Florida forfeiture proceeding ("Gladstone Petition"), contesting the forfeiture of Stonewell. In his petition, Mr. Gladstone asserted that he was the "sole shareholder, officer and director" of Stonewell and therefore Stonewell should be surrendered to him. On April 27, 2001, Mr. Gladstone filed a Motion for Summary Judgment in the Middle District of Florida forfeiture proceeding, claiming Stonewell was a subsequent bona fide purchaser of the assignment of the Center Mall mortgage.

Magistrate Judge Spaulding held extensive evidentiary hearings in the Gladstone Petition proceeding.[3] The testimony of Mr. Gladstone, Mr. Pfeffer, Mr. Blutrich, and Ms. Schneiderman established that in early 1997, Mr. Gladstone was introduced to Mr. Weiss through a mutual acquaintance. Mr. Weiss suggested to Mr. Gladstone that he buy an assignment of the mortgage on the Center Mall property, owned at the time by Mr. Weiss's nominee, Jasper Properties, Inc. ("the Jasper mortgage"). Mr. Weiss proposed selling the Jasper mortgage to Mr.

---

[3]Evidentiary hearings were held August 20, 21, 22 and 23, 2001, and on November 13 and 14, 2001.

5

Gladstone at a discount, in exchange for the forgiveness of an unpaid loan Mr. Gladstone had made to New Contenders, a company with which Mr. Blutrich was affiliated. Mr. Pfeffer told Mr. Gladstone that the mortgage was non-performing and that tax payments were delinquent. Mr. Gladstone understood that in order for him to recover any funds from a non-performing mortgage, he would have to foreclose on the property. Mr. Pfeffer also told Mr. Gladstone, in the presence of Mr. Blutrich and Mr. Weiss, that there was a *lis pendens* on the property.

On March 12, 1997, Mr. Gladstone formed Stonewell to hold the assignment of the Jasper mortgage. Mr. Gladstone has been, at all times, the sole officer, director and shareholder of Stonewell. On March 20, 1997, Mr. Gladstone went to Mr. Pfeffer's office in New York. There, Mr. Pfeffer signed documents assigning the Jasper mortgage to Stonewell. Mr. Gladstone told Mr. Pfeffer that he was stepping into Mr. Pfeffer's shoes as Weiss's nominee in causing Stonewell to acquire the Center Mall mortgage. Mr. Gladstone also told Mr. Pfeffer that Mr. Weiss had agreed to return the money that Mr. Gladstone was paying to purchase the assignment.

After the assignment of the Jasper mortgage, Mr. Weiss told Mr. Pfeffer "not to worry" because they "were still at some point going to be able to realize a lot of money out of the property and that he was in control of everything." After

6

the Jasper mortgage was assigned to Stonewell, Mr. Gladstone did not send any demand letters to the owner of the Center Mall property or begin foreclosure proceedings.

The District Court denied the Gladstone Petition, holding instead that the Government was entitled to the Center Mall mortgage. The District Court held that Mr. Gladstone acted as one of Mr. Weiss's nominees when he created Stonewell to accept the Center Mall mortgage. Because Mr. Gladstone and Stonewell were nominees of Mr. Weiss, Stonewell never owned the mortgage in its own right. The District Court concluded that Mr. Gladstone did not have standing to contest the forfeiture of the Center Mall mortgage and ordered that the mortgage be forfeited to the Government.

On December 17, 2003, Mr. Gladstone filed a notice of appeal to this Court. On April 15, 2004, this Court reversed the Middle District of Florida's ruling, in part, holding that it exceeded the scope of its authority in awarding the Center Mall mortgage to the Government. The special verdict form from Mr. Weiss's criminal trial directed that Mr. Weiss's interest in certain companies involved in the Center Mall mortgage transaction be forfeited, including Center Mall, Inc., Center Point Mall, Inc., Jasper Properties, Inc., and Stonewell. The special verdict form did not include the Center Mall mortgage itself as an asset that was forfeited.

7

This Court stated in a footnote that it had "no opinion" on the Government's ability to pursue the mortgage as a substitute asset "based on the forfeiture of the $3.1 million." *United States v. Gladstone*, No. 02-16844, slip op. at 5 n.2 (11th Cir. Apr. 15, 2004). This Court also held the District Court's findings that (1) the mortgage was never an asset owned by Stonewell and (2) Stonewell belonged to Mr. Gladstone and thus was not subject to forfeiture were "not clearly erroneous." *Id*. at 10.

On July 20, 2004, the District Court issued a second amended preliminary order of forfeiture upon application by the Government. The Government's application sought forfeiture of the proceeds of the sale of the Center Mall property based on a substitute assets theory pursuant to 18 U.S.C. § 1963(m).[4] The Government asserted that the proceeds from the Center Mall property should be forfeited as an asset traceable to the sum of $3.1 million ordered forfeited by the jury in Mr. Weiss's criminal trial. The order further declared that any

[4]Section 1963(m) provides:
If any of the property described in subsection (a), as a result of any act or omission of the defendant--
(1) cannot be located upon the exercise of due diligence;
(2) has been transferred or sold to, or deposited with, a third party;
(3) has been placed beyond the jurisdiction of the court;
(4) has been substantially diminished in value; or
(5) has been commingled with other property which cannot be divided without difficulty;
the court shall order the forfeiture of any other property of the defendant up to the value of any property described in paragraphs (1) through (5).

individuals claiming an interest in the proceeds of the sale of the Center Mall property must file petitions within thirty days.

On August 18, 2004, Stonewell, but not Mr. Gladstone, challenged the second amended preliminary order of forfeiture by filing a petition of innocent owner-claim to property ("Stonewell Petition"). Stonewell claimed full ownership of the mortgage and argued that it was entitled to the proceeds of the sale of the Center Mall property.

On March 11, 2005, the Government moved for summary judgment on its application for a second amended preliminary order of forfeiture. Its motion was granted by the District Court on May 6, 2005. The District Court concluded that the Government was entitled to the proceeds from the mortgage on the substitute asset theory and entered a second amended preliminary order of forfeiture. The District Court also held that Stonewell lacked standing to bring a petition because (1) the Center Mall mortgage was not an asset of Stonewell and (2) Mr. Gladstone adequately represented Stonewell's interests when he filed the Petition in April 2000. Stonewell has timely appealed from the District Court's judgment.

## C

In a separate action, Donna L. Williams, Insurance Commissioner for the State of Delaware and statutory receiver for NHLIC ("Receiver"), brought a civil

action against Mr. Pfeffer and other associates and nominees of Mr. Weiss ("the LPDA defendants") in the United States District Court for the Southern District of New York in April 1996. *See Williams v. LPDA*, No. 96-Civ.-3079 (CLB) (S.D.N.Y. filed April 1996).[5] The suit sought title to various stolen assets, including the Center Mall property. On August 15, 1996, the Receiver filed a notice of *lis pendens* pertaining to the Center Mall property in Monmouth County, New Jersey.

In November of 1997, the Receiver in the *Williams* action sought leave to sell the Center Mall property free of all liens and mortgages based on the Notice of *Lis Pendens* filed in New Jersey. On November 7, 1997, the court in the *Williams* action issued an Order to Show Cause why an order should not be made and entered authorizing the Receiver to: (a) enter into, execute and perform the contract of sale for the Center Point Mall; (b) enter into, execute and perform such other and further agreements and instruments as may be necessary to accomplish the sale of the property; and (c) sell the property free and clear of the Jasper Mortgage which attached to the proceeds of the sale pending the determination of

---

[5]Due to NHLIC's insolvency, the Delaware Chancery Court entered a Rehabilitation Order, on the Receiver's request, on May 25, 1994, directing the Receiver to take immediate possession and control of all NHLIC assets. On November 21, 1995, the Delaware Chancery Court entered a Liquidation and Injunction Order replacing the Rehabilitation Order. The Liquidation Order authorized the Receiver to sue on behalf of NHLIC and for the benefit of NHLIC's policyholders.

whether this mortgage constitutes a valid and enforceable lien on the property.

On November 13, 1997, Stonewell was notified of the action by copy of the Order to Show Cause. On November 14, 1997, the LPDA defendants in the *Williams* action filed an Opposition to the Receiver's application to sell the property free and clear of all liens. In the opposition, the LPDA defendants argued that allowing the Receiver to sell the property would infringe on the rights of third party mortgagees, such as Stonewell, who were not before the court.

On November 18, 1997, Stonewell filed a non-party memorandum of law in the *Williams* action, in opposition to the Receiver's application to allow the sale of the property free and clear of mortgages. On November 20, 1997, the court in the *Williams* action ordered Stonewell to show cause why an order should not be entered authorizing the Receiver to sell the property free and clear of Stonewell's mortgage, with such mortgage to attach to the proceeds of the sale pending the determination of whether the mortgage constitutes a valid and enforceable lien on the property. On November 20, 1997, oral argument was heard on the Receiver's Supplemental Order to Show Cause. On December 2, 1997, Stonewell filed a supplemental memorandum of law in opposition to the Receiver's application to allow sale of property free and clear of mortgages in the *Williams* action.

On December 3, 1997, the *Williams* court granted leave to the Receiver to

11

sell the Center Mall property free and clear of all liens and mortgages. On December 4, 1997, in response to a request by counsel for Stonewell, the *Williams* court entered a supplemental order, directing the Receiver to deposit the proceeds of the sale of the Center Mall into an interest bearing escrow account; and that no withdrawals may be made from the escrow account without further order of the Court on notice to the parties to this action and to Stonewell. The Receiver sold the Center Mall for over $2.2 million to CRL Realty Associates, L.P., placing the net proceeds of $1.8 million in an escrow account.[6]

## II

Stonewell contends, without citing any authority, that this Court lacks jurisdiction to hear this appeal because

> the United States District Court, Southern District of New York, has exclusive jurisdiction over the Proceeds of the Sale of the Center Mall Property which are being held in escrow pending the outcome of the Williams action, and the District Court does not have jurisdiction over them as a matter of law.

"Jurisdictional issues are questions of law which we decide *de novo*." *Malowney v. Fed. Collection Deposit Group*, 193 F.3d 1342, 1346 (11th Cir. 1999).

---

[6]On November 20, 2000, the *Williams* court granted Stonewell's motion for an interim stay pending the outcome of the criminal and forfeiture proceedings against Mr. Weiss. Since that date, counsel for Stonewell has filed periodic status reports in the *Williams* matter, updating that court as to the status of these forfeiture proceedings.

Stonewell's contention that the District Court does not have jurisdiction over the proceeds from the sale of the Center Mall property misstates the issue. The instant forfeiture proceedings are not *in rem* proceedings. *United States v. Gilbert*, 244 F.3d 888, 919 (11th Cir. 2001) ("Criminal forfeiture under RICO is *in personam*."). The District Court had jurisdiction over this *in personam* criminal forfeiture proceeding pursuant to 18 U.S.C. § 3231. *See* 18 U.S.C. § 3231 (2000) ("The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."). Section 1963(j) of Title 18 of the United States Code confers jurisdiction upon the District Court to enter orders relating to property subject to forfeiture, without regard to the location of that property.[7] This Court has jurisdiction pursuant to 28 U.S.C. § 1291 (2000).

The *Williams* action, also an *in personam* suit, was filed in the District Court for the Southern District of New York pursuant to that court's diversity jurisdiction under 28 U.S.C § 1332 (2000). The Receiver for NHLIC brought suit against persons and entities, not property, seeking recovery of funds believed to

---

[7]Section 1963(j) provides: "[t]he district courts of the United States shall have jurisdiction to enter orders as provided in this section without regard to the location of any property which may be subject to forfeiture under this section or which has been ordered forfeited under this section."

have been stolen from NHLIC. The fact that the court in *Williams* is exercising control over the proceeds from the sale of the Center Mall property does not transform that suit into an *in rem* proceeding or alter the basis of the court's jurisdiction. *See United States v. $174,206.00 in United States Currency*, 320 F.3d 658, 661 (6th Cir. 2003) (holding that the district court properly exercised jurisdiction over a criminal forfeiture action where a state court, in a related state court forfeiture proceeding, had *in personam* jurisdiction over the same currency subject to forfeiture).[8]

## III

The Government contends that this Court does not have jurisdiction to hear this appeal because Stonewell lacks standing to bring a petition of innocent-owner claiming an interest in the Center Mall mortgage. Standing is a threshold issue that is subject to *de novo* review. *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 806 (11th Cir.1993); *United States v. $38,000 in U.S. Currency*, 816 F.2d 1538, 1543 (11th Cir. 1987). If a claimant lacks Article III standing to challenge a forfeiture, this Court does not have jurisdiction to

---

[8]The procedural effect of a final order and judgment of forfeiture of the Center Mall mortgage, as a substitute asset for the $3.1 million forfeited by the jury in Mr. Weiss's criminal trial, is that the Government will be in a position to seek enforcement of that judgment with the court in the *Williams* action, which is holding the Center Mall property proceeds in escrow, should it choose to do so.

14

consider the claim. *$38,000 in U.S. Currency*, 816 F.2d at 1543 ("It is well established that in order to contest a forfeiture, a claimant first must demonstrate a sufficient interest in the property to give him Article III standing; otherwise, there is no 'case or controversy,' in the constitutional sense, capable of adjudication in the federal courts."). The Supreme Court has instructed that:

> [t]he party invoking federal jurisdiction bears the burden of establishing [standing]. Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (citations omitted).

The Government maintains that Stonewell lacks standing to challenge the forfeiture of the Center Mall property proceeds because Stonewell is bound by the District Court's ruling in the Gladstone Petition proceedings that Stonewell never owned the Center Mall mortgage. The government argues that under the doctrine of collateral estoppel, Stonewell is precluded from relitigating issues decided by the District Court when it denied the Gladstone Petition, including the issue of who owned the Center Mall mortgage. The District Court held that the doctrine of collateral estoppel barred Stonewell from relitigating the ownership issue. We

15

review *de novo* a district court's decision about whether collateral estoppel applies. *Quinn v. Monroe County*, 330 F.3d 1320, 1328 (11th Cir. 2003). A "district court's factual determinations underlying its legal conclusion are upheld unless clearly erroneous." *Id.*

"Collateral estoppel bars relitigation of an issue previously decided if the party against whom the prior decision is asserted had 'a full and fair opportunity' to litigate that issue in an earlier case." *Blohm v. Comm'r of Internal Revenue*, 994 F.2d 1542, 1553 (11th Cir. 1993) (quoting *Allen v. McCurry*, 449 U.S. 90, 94-95 (1980)). The party seeking to invoke collateral estoppel must establish that (1) the issue in the pending case is identical to that decided in a prior proceeding; (2) the issue was necessarily decided in the prior proceeding; (3) the party to be estopped was a party or was adequately represented by a party in the prior proceeding; and (4) the precluded issue was actually litigated in the prior proceeding. *Blohm*, 994 F.2d at 1553 (citing *In re Raiford*, 695 F.2d 521, 523 (11th Cir.1983)).

The issue before the District Court in the Gladstone Petition, the "prior proceeding" for collateral estoppel purposes, was identical to the issue in this case: namely, the ownership of the Center Mall mortgage. In adjudicating the Gladstone Petition, the District Court necessarily decided the ownership issue

16

because it had to determine which assets, if any, Stonewell owned in order to decide whether Mr. Weiss had any interest in Stonewell. In the Gladstone Petition ruling, the District Court determined that Mr. Gladstone, through Stonewell, was acting as Mr. Weiss's nominee. Because a person or entity cannot have a vested interest in property if that person or entity is found to be acting as a nominee for someone whose property is subject to the forfeiture, *Braxton*, 858 F.2d at 652-53 & 653 n.6, the District Court held that Stonewell has no vested interest in the Center Mall mortgage.

The record also demonstrates that the issue was actually litigated in the prior proceeding, as evidenced by the lengthy testimony of Mr. Gladstone and others at the evidentiary hearings held before Magistrate Judge Spaulding. In denying the Gladstone Petition, the District Court held, in part, that:

> [w]ithin the context of the Center Mall mortgage scam, the evidence clearly reflects that Richard Gladstone, through Stonewell Corporation, acted as Sholam Weiss's nominee;

> [w]hen Gladstone caused Stonewell to take an assignment of [the Center Mall] mortgage in 1997, he and Stonewell not only acted as another nominee of Weiss, but also Stonewell as assignee stood in the shoes of the assignor and took the mortgage subject to all the defects known to the assignor, in this case Sholam Weiss acting through Jasper and Pfeffer; and,

17

. . . the evidence shows that [the mortgage] was not an asset owned by Stonewell. Gladstone, using this corporation, acted as Weiss's nominee to hide Weiss's interest in this mortgage. The asset, the mortgage, was never owned by Stonewell in its own right. Therefore, Stonewell has no standing to contest the Magistrate's finding that the mortgage on, and the proceeds of the sale of, the Center Mall Property should be forfeited to the United States.

In the order on appeal, the District Court concluded that Stonewell lacked standing to claim an interest in the Center Mall mortgage and was collaterally estopped from relitigating the issue of its ownership because

[t]he issue of the ownership of the Center Mall mortgage was necessarily decided and actually litigated in the proceeding on Gladstone's Petition because it was necessary for the Court to determine the ownership [issue] in determining the ownership of the Stonewell Corporation and the assets of the Stonewell Corporation, and extensive evidence was presented by Gladstone and the Government on these issues.[9]

Additionally, the District Court held that "Stonewell was adequately represented by Gladstone in the earlier proceeding" because Stonewell is a closely held corporation. Mr. Gladstone both alleged in his petition and testified at the evidentiary hearing, held in connection therewith, that he is the sole officer,

_____

[9]The jury forfeited Defendant Weiss's interest in the Stonewell Corporation so the District Court had to determine, in the earlier Petition, who owned Stonewell and whether Weiss had an interest in Stonewell.

18

director and shareholder of Stonewell. Stonewell raised the same allegations in its petition that Mr. Gladstone raised in his petition.

The District Court addressed the evidentiary issues and correctly concluded that the purported additional evidence Stonewell would present in support of its position was either inadmissible or unpersuasive. For example, the affidavit of Matthew Dollinger, attorney for Stonewell, is inadmissible because it alleges facts about which Mr. Dollinger lacks personal knowledge. Stonewell also offered in support of its petition, the deposition testimony of Isaac Nussen taken in the *Williams* action. Stonewell's counsel admitted, however, that Mr. Nussen's testimony in the *Williams* action was substantially the same as his testimony at the criminal trial, which the Magistrate Judge considered when analyzing the Gladstone Petition.

Stonewell contends that the doctrine of collateral estoppel does not apply to strip it of standing in this case because the District Court's conclusions in deciding the Gladstone Petition are dicta. According to Stonewell, this Court's earlier determination that "the district court had no jurisdiction to award the mortgage to the United States because the jury did not find that the mortgage was forfeit, and the district court did not include the forfeiture of the mortgage in Weiss's sentence" constitutes a "mandate" from the Eleventh Circuit, making the District

Court's conclusions in the Gladstone Petition ruling dicta. This argument is not persuasive.

This Court did not issue a "mandate" to the District Court, nor did it conclude that the District Court lacked jurisdiction to determine the ownership of the Center Mall mortgage. Instead, this Court "reverse[d] that portion of the district court's judgment, entered under § 1963,[10] giving the mortgage to the

[10]Section 1963(*l*) provides in relevant part:
(1) Following the entry of an order of forfeiture under this section, the United States shall publish notice of the order and of its intent to dispose of the property in such manner as the Attorney General may direct. The Government may also, to the extent practicable, provide direct written notice to any person known to have alleged an interest in the property that is the subject of the order of forfeiture as a substitute for published notice as to those persons so notified.

(2) Any person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may, within thirty days of the final publication of notice or his receipt of notice under paragraph (1), whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property. The hearing shall be held before the court alone, without a jury. . . .

(6) If, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence that–

> (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or

> (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to

United States."[11] *Gladstone*, No. 02-16844, slip op. at 11. This Court upheld the District Court's finding that Stonewell did not and had not owned the mortgage as "not clearly erroneous," *id*. at 10, and "express[ed] no opinion . . . on the United States's ability to pursue the mortgage based on the forfeiture of the $3.1 million." *Id*. at 5 n.2.

Stonewell also argues that it has standing because, under *Warth v. Seldin*, 422 U.S. 490 (1975), it is entitled to have the court decide the merits of its claim because the invasion of legal rights created by the forfeiture statutes creates Article III standing. *Id.* at 500 (citing *Linda R. S. v. Richard D.*, 410 U.S. 614, 617 n.3 (1973) (explaining that "Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute"); *see also Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 212 (1972) (White, J., concurring) (explaining that because Congress intended to define standing under the Civil Rights Act of 1964 as broadly as possible under

---

forfeiture under this section;

the court shall amend the order of forfeiture in accordance with its determination. . . .

[11]The special verdict of forfeiture did not specifically find that the mortgage was forfeitable but instead found that "the government has proven . . . that the *defendant's interest* in the following property is forfeitable because the property, Center Mall, Inc., . . . was . . . acquired or maintained in violation of [18 U.S.C. § 1962 and] . . . constituting, or derived from, any proceeds of racketeering" and that $3,100,000 "represents the amount of money involved" in that racketeering activity.

21

Article III, the Fair Housing Act conferred standing to sue on any resident of the housing unit who had been injured by racial discrimination in the management of the facilities).

These cases do not support Stonewell's theory. While it is true that "Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," *Linda R. S.*, 410 U.S. at 617 n.3, "[a] federal court's jurisdiction . . . can be invoked only when the plaintiff himself has suffered 'some threatened or actual injury resulting from the putatively illegal action . . . .'" *Warth*, 422 U.S. at 499 (quoting *Linda R. S.*, 410 U.S. at 617). As the Supreme Court pointed out in *Linda R. S.*, "[e]ven though the past law of standing is so cluttered and confused that almost every proposition has some exception, the federal courts have consistently adhered to one major proposition without exception: *One who has no interest of his own at stake always lacks standing*." *Linda R. S.*, 410 U.S. at 617 n.4 (quoting K. Davis, Administrative Law Text 428-429 (3d ed. 1972)) (emphasis added).

Stonewell has not demonstrated that it has an interest in the Center Mall mortgage and therefore lacks standing to bring this appeal challenging the forfeiture of the proceeds of the sale of the Center Mall property.

This appeal is DISMISSED for lack of jurisdiction.