[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 06-11880
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 28, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 00-08950-CV-DMM

THOMAS R. FARESE,

Plaintiff-Appellee,

versus

KENNETH J. SCHERER,
CHARLES I. COHEN, individually,
et al.,

Defendants,

HARALD DUDE,
Individually,
PALM BEACH VENTURES, INC.,
MOBILE MANAGEMENT, INC.,
FLORIDA VENTURES, INC.,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

**(October 28, 2008)**

Before BIRCH, PRYOR, and KRAVITCH, Circuit Judges.

PER CURIAM:

Defendants, Harald Dude, Mobile Management Corp., Florida Ventures, and Palm Beach Partners appeal the denial of their motion for a directed verdict under Federal Rule of Civil Procedure 50(a) and motion for judgment notwithstanding the verdict under Rule 50(b). Because we have determined that some of the claims involved were barred by collateral estoppel, we reverse the district court's ruling on collateral estoppel, vacate the judgment, and remand for further proceedings.

## I. BACKGROUND

The parties in this action have a long and tortuous history of litigation amongst themselves relating to the ownership and management of Club Diamonds, a strip club, and the shopping center where the club is located. Ownership and control of the club and the shopping center were vested in corporate entities, and the parties in turn owned portions of these corporate entities. The multitude of disputes and lawsuits need not be recounted here in detail. What is relevant to this appeal is that in an earlier lawsuit in a Florida state court, the parties entered into a Stipulated Settlement Agreement resolving that suit and all other pending disputes between them. The settlement agreement stated:

> The parties hereby agree that any and all pending disputes among
> them shall be narrowed to disputes involving the ownership of stock

2

of Florida Ventures, Inc.[1] and voting rights for said stock . . . To this end, and to whatever extent [the various lawsuits between the parties] are still active, they shall be dismissed, with prejudice or even if not active or known as of this date shall not be asserted and/or released except as to the aforesaid claims [involving disputes as to ownership].

In July 1999, the state court in that suit issued an order enforcing the agreement and requiring the parties to abide by its terms. On December 3, 1999, the state court dismissed the action with prejudice on account of the existence of the settlement agreement.

The present case, although complicated, at bottom involves allegations by Thomas Farese, the plaintiff, that his ownership interest in entities owning or controlling the club and the shopping center property were injured by Defendants' violations of a protective order, bankruptcy fraud, civil theft, and fraud. Defendants, on the other hand, assert that Farese did not own either of these entities at any time when the alleged misconduct occurred and so none of the acts—which they deny committing—can have been directed at him.

The prior state court dismissal pursuant to the settlement agreement leads us to the operative question for this court: whether Farese's claims are "dispute[s] involving the ownership of stock of Florida Ventures, Inc. and voting rights for said stock" within the meaning of the settlement agreement or whether they fall

---

[1] Florida Ventures is the entity in control of the operation of Club Diamonds.

into the category of claims barred by the agreement.

In its Omnibus Order denying the motion for judgment as a matter of law, the district court found that Farese's present claims were not precluded by the settlement agreement.   The court stated:

> [T]he Settlement Agreement bars any action for the fraudulent transfer of stock, but specifically provides that it is not a bar to a future determination of proper ownership of the stock—one of the key issues herein.  Accordingly, the Court finds that Farese is not barred as a matter of law from trying to establish that he had an ownership interest in FCM so as to establish RICO standing . . . [T]he Court cannot find that Farese is precluded as a matter of law from establishing that he had an ownership interest in FCM at the time of the DeCesare transfer.

In essence, the court held that the settlement agreement did not bar Farese from establishing standing, but never addressed the preclusive effect of the agreement on his RICO claims.  All claims were presented to the jury, and a verdict was handed down in favor of Farese.

## II.  STANDARD OF REVIEW

This Court reviews <u>de novo</u> a district court's decision regarding the applicability of collateral estoppel.  <u>U.S. v. Weiss</u>, 467 F.3d 1300, 1308 (11th Cir. 2006).  Factual determinations underlying the district court's legal conclusion, however, are upheld unless clearly erroneous.  <u>Id.</u>

4

## III. DISCUSSION

Defendants argue that the settlement agreement from the parties' previous state litigation precludes all lawsuits except those which narrowly determine rightful ownership interests in Florida Ventures.

Farese argues that because this case involves questions of ownership of Florida Ventures and Palm Beach Partners, the entity owning the shopping center, it is not barred by the settlement agreement. In his supplemental brief, Farese implies that Dude violated the settlement agreement and, therefore, Farese is entitled to consider the agreement void and violate it himself, by filing claims barred by the agreement. Farese also asserts that many of his allegations involve conduct that occurred after the date the settlement agreement was entered into, and thus are beyond the reach of the agreement.

It is "well established law that a federal court cannot give preclusive effect to a state court order, in subsequent litigation, without determining whether the state from which the order was rendered would give that order preclusive effect through the operation of the rendering state's law of res judicata and collateral estoppel." Urfirer v. Cornfeld, 408 F.3d 710, 718 (11th Cir. 2005). We are thus bound by Florida law as to the preclusive effect of the settlement and the entry of judgment in prior Florida state litigation.

5

Under Florida law, when a court approves a settlement agreement and dismisses the case with prejudice pursuant to the agreement, that decision is a binding final decision rendered by a court of competent jurisdiction and is entitled to res judicata effect. Arrieta-Gimenez v. Arrieta-Negron, 551 So.2d 1184, 1186 (Fla. 1989). The res judicata effect is slightly different, however, because "the principles of res judicata apply (in a somewhat modified form) to the matters specified in the settlement agreement, rather than the original complaint." Norfolk Southern Corp. v. Chevron, U.S.A., Inc., 371 F.3d 1285, 1288 (11th Cir. 2004). Preclusion extends to all matters the parties intended to be covered under the settlement agreement, even if not formally presented in the complaint that initiated that prior suit. W.J. Perryman & Co. v. Penn. Mut. Fire Ins. Co., 324 F.2d 791, 793 (5th Cir. 1963).[2] In determining what the parties intended to be covered, the rules of contract law govern the interpretation of the meaning and reach of settlement agreements. Robbie v. City of Miami, 469 So.2d 1384, 1385 (Fla. 1985); see also U.S. v. ITT Continental Baking, 420 US 223, 236-237 (1975).

Here, the parties stated in the settlement agreement that they wished "to resolve their outstanding differences among themselves except for the issue regarding ownership of the stock in Florida Ventures." They agreed that "any and

---

[2] In Bonner v. City of Pritchard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), we adopted as precedent all decisions from the former Fifth Circuit prior to October 1, 1981.

all pending disputes" would be "narrowed to disputes involving ownership of stock of Florida Ventures, Inc. and voting rights for said stock." The parties further agreed that all claims would be dismissed, with prejudice, "even if not active or known." This broad language establishes that the parties agreed to preclude all litigation between the parties on any subject matter whether or not the claims were known to the parties at that time.[3] The only exception in the agreement provided that claims to resolve disputes regarding lawful ownership of stock and voting rights would be permitted.

We find that the claims involved here are covered by the terms of the settlement agreement, and we reverse the holding of the district court to the contrary. Farese's claims allege bankruptcy fraud, obstruction of justice, civil theft, and fraud. None of these claims seek determination of the legal ownership of stock. We agree with the district court that ownership of Florida Ventures is a "key issue" in resolving this case, but it is not *the* issue. Questions of ownership must be resolved to establish standing and in order to assess damages; the cause of action here, however, is not one to determine ownership interests of the parties. The settlement agreement, therefore, bars some of the claims Farese has alleged.

---

[3] Florida law enforces broadly written settlement agreements, and so we will accept the broad language in this agreement. See Mazzoni Farms, Inc. v. E.I. DuPont De Nemours and Co., 223 F.3d 1275, 1285.

Not every claim is precluded however, because of the timing of the settlement agreement and that of the alleged wrongful conduct. Florida law allows releases of liability for future negligent conduct, if the release explicitly states that it covers future conduct. See Zinz v. Concordia Props., Inc., 694 So.2d 120, 121 (Fla. 4th Dist. Ct. App. 1997). Here, the parties' agreement did not state explicitly that it intended to bar actions relating to conduct occurring after the agreement was finalized. The agreement referred to the parties "*outstanding* differences" and "any and all *pending* disputes." (emphasis added). The agreement, therefore, precludes only those of Farese's claims that arose out of the defendants' conduct that occurred prior to the agreement. This raises the question of what date marks the cut-off for conduct protected from suit by Farese by the preclusive effect of the agreement. The state court entered an order approving and enforcing the settlement agreement on July 8, 1999. The state court case was not dismissed with prejudice pursuant to the agreement, however, until December 3, 1999. Not until that time did the settlement agreement take on the weight of a court judgment and the collateral estoppel effects of the agreement begin running. See I.A. Durbin, Inc. v. Jefferson Nat. Bank, 793 F.2d 1541, 1549 (11th Cir. 1986) (holding that collateral estoppel applies only where the antecedent judgment was a final judgment). It also makes sense to use December 3, 1999 because on that day the

8

court found that the settlement agreement was in effect and continuing to operate, and therefore, at that time, the parties showed a continuing interest to resolve all "pending disputes" between them. Accordingly, we hold that the settlement agreement bars Farese's claims relating to conduct that occurred prior to December 3, 1999.

We also note that the alleged breach of the agreement by the defendants does not alter the applicability of the settlement agreement. Farese alleges that Dude made transfers of stock in violation of the terms of the agreement,[4] and Farese argues that this breach by Dude allows him to breach by bringing claims barred by the agreement. We disagree. Parties are limited to contract remedies following the breach of a settlement agreement. Bal Harbour Village v. City of North Miami, 678 So.2d 356, 361 (Fla. 3d. Dist. Ct. App. 1996). If the Dude defendants did in fact breach the settlement agreement—and we express no opinion on that question—Farese has the option to either bring an action to rescind the agreement or sue for damages caused by the breach. Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1279 (11th Cir. 2004). Farese has provided no authority—and we can find none—suggesting that breach of a settlement agreement automatically rescinds or voids the agreement. Bankruptcy courts have frequently stated just the

---

[4] The agreement stated that "no further stock or asset transfers shall be made without the consent of all parties and that all parties shall abide by the Protective Order . . . ."

9

opposite; the non-breaching party is bound by the agreement despite the breach, unless and until he brings a rescission action. See e.g., In re Hughes, 166 B.R. 103, 105 (Bankr. S.D. Ohio 1994). This case does not, and cannot,[5] involve a claim by Farese to rescind the agreement.

Furthermore, collateral estoppel applies by virtue of the judgment dismissing the state claims pursuant to the settlement agreement rather by the agreement itself. Violation of an agreement upon which the judgment relied in no way diminishes the validity and the preclusive effect of the judgment itself.

The jury returned a general verdict covering both claims that we have determined are precluded by the prior settlement agreement because they arose out of conduct that occurred prior to the state court dismissal and other claims that are not precluded. We, therefore, cannot separate the precluded claims from the non-precluded claims, and we must vacate the entire judgment.

## CONCLUSION

For the reasons stated above, we **VACATE** the judgment and **REMAND** with instructions to the district court to dismiss all claims barred by the December 3, 1999 judgment and to proceed with all claims accruing after that date.

---

[5] The district court (via the affirmed Magistrate's Report and Recommendation) ruled that by virtue of the *Rooker-Feldman* doctrine, the court did not have jurisdiction to declare the settlement agreement invalid and thus invalidate the state court judgment dismissing the suit pursuant to that agreement. Farese has not appealed that ruling.