[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-14522
Non-Argument Calendar

_____

D.C. Docket No. 1:10-cr-00521-TCB-AJB-2


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

OTIS HENRY,
a.k.a. Wesley Johnson,

Defendant,

NUGEN MOTOR SPORTS, INC.,
d.b.a. Nugen MotorSports,

Claimant-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(July 1, 2015)

Before TJOFLAT, WILSON and FAY, Circuit Judges.

PER CURIAM:

Nugen Motor Sports, Inc. ("Nugen"), a third-party claimant in a 21 U.S.C. § 853 criminal forfeiture proceeding, appeals the district judge's decision on summary judgment that Nugen lacked both Article III and statutory standing to contest the forfeiture of a white Audi Q7 ("the Audi"). We vacate and remand for further proceedings consistent with this opinion.

## I.    BACKGROUND

A.    Factual History

On October 1, 2010, law enforcement officers executed a search warrant on the residence of Otis Henry, a.k.a. Wesley Johnson, a defendant in the underlying criminal case, and Sara Scott. The Audi was parked in the garage of the residence, ten feet from a bag containing approximately 25 pounds of marijuana. The officers seized the Audi. Later, a narcotics canine sniffed the exterior of the Audi and alerted to the presence or residue of controlled substances. The operative fourth superseding indictment in the underlying criminal case included a provision for forfeiture of the Audi.

On July 24, 2013, the district judge issued a preliminary forfeiture order, authorizing forfeiture of the Audi and other property. The government provided

2

written notice of the forfeiture to Nugen on August 1, 2013. On August 16, 2013, Nugen timely filed a 21 U.S.C. § 853(n) petition, stating (1) it had acquired legal title to the Audi by purchasing the Audi from Triple M Auto Consultants ("Triple M") on July 13, 2010; (2) it was a bona fide purchaser of the Audi; and (3) defendant Henry had not purchased the Audi or obtained any right, title, or interest in it.

In a deposition, Paul Hue, Nugen's sole shareholder and chief executive officer, testified Henry approached Hue concerning financing purchase of the Audi. At Henry's request, Hue purchased the Audi from Triple M for $36,593.25 in June 2010. Hue purchased the Audi with cash belonging to him, not Nugen. The bill of sale for the Audi is dated June 21, 2010, and signed by Hue with no indication he was acting as Nugen's representative. The Audi was insured in Hue's name, but the July 13, 2010, certificate of title showed Nugen as the owner. Asked why Hue titled the Audi in Nugen's name, Hue responded he did not think about it. Hue did not have a bill of sale showing he had sold the Audi to Nugen.

Hue testified Henry was to buy the Audi, pursuant to an unwritten agreement. Hue's testimony about the terms of his unwritten agreement with Henry is inconsistent. He testified Henry had agreed to pay $1,200 per month for 36 months. Nevertheless, Henry was to pay the entire amount within one year. Finally, Hue stated Henry was to pay Hue's purchase price plus a $6,000 fee,

3

which was due at the end of the agreement term.  Hue testified Henry had paid $6,000 to $7,000 between June or July 2010 and October 2010.  Hue did not state clearly whether the agreement was between Henry and Hue or Henry and Nugen, and he did not clarify whether he or Nugen had received the payments.

B.    Summary Judgment

Nugen and the government each moved for summary judgment.  The government argued Nugen lacked Article III standing to contest forfeiture of the Audi, because (1) Hue's deposition testimony showed Nugen did not pay value for the Audi, have an actual ownership interest in it, or invest in it, and (2) Nugen was a mere nominee titleholder.  Nugen contended it had intended to make a profit by selling the Audi to Henry under their unwritten agreement.  Nugen had an interest in the Audi superior to Henry's, because Henry had failed to exercise his right to purchase the Audi under the terms of their agreement.  Nugen argued it was not a nominee titleholder, because it had purchased the Audi from Triple M and did not intend to transfer title to Henry until Henry had paid for the Audi in full.

The district judge granted the government's summary judgment motion and denied Nugen's motion.  The judge determined Nugen lacked Article III standing to challenge forfeiture of the Audi, because the certificate of title of the Audi listed Nugen as the owner and was only prima facie evidence of ownership under Georgia law, which was rebutted by Hue's testimony.  The judge concluded Nugen

4

was a mere nominee titleholder, and forfeiture of the Audi would strip Nugen of its prima facie evidence it owned the Audi.  Additionally, the judge determined Nugen lacked statutory standing to contest the forfeiture.  Nugen's interest in the Audi, if any, amounted to an unperfected security interest.  Citing state law, the district judge concluded such an interest was insufficient to challenge the government's vested interest in the Audi.

## II.    DISCUSSION

A.    Nugen's Article III Standing

On appeal, Nugen argues it has Article III standing, based on its (1) acquisition of legal title to the Audi, (2) financial stake in the Audi under the purported transaction with Henry, and (3) alleged right to repossess the Audi after Henry defaulted on his payments.  The government responds Hue, not Nugen, is the true owner of the Audi, and Nugen stands to lose only bare title, which is insufficient to confer standing.

In the context of third-party claims to criminally forfeited property, we review a district judge's factual findings for clear error and legal conclusions de novo.  *United States v. Shefton*, 548 F.3d 1360, 1363 (11th Cir. 2008).  "Criminal forfeiture proceedings are governed by 21 U.S.C. § 853 and Federal Rule of Criminal Procedure 32.2."  *United States v. Davenport*, 668 F.3d 1316, 1320 (11th Cir. 2012).  A party to a § 853(n) ancillary forfeiture proceeding may move for

summary judgment under Federal Rule of Civil Procedure 56.  Fed. R. Crim. P. 32.2(c)(1)(B).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511 (1986).

"Standing is a threshold issue that is subject to *de novo* review."  *United States v. Weiss*, 467 F.3d 1300, 1307 (11th Cir. 2006).  "If a claimant lacks Article III standing to challenge a forfeiture, this Court does not have jurisdiction to consider the claim."  *Id.* at 1308.  Standing consists of three elements: (1) the party claiming standing must have suffered an "injury in fact," an invasion of a legally protected interest that is both (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) there must be some causal connection between the injury and the complained-of conduct; and (3) it must be likely, not just speculative, the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136 (1992).  The party invoking federal jurisdiction bears the burden of establishing all three elements.  *Id.* at 561, 112 S. Ct. at 2136.  "At the pleading stage, general factual allegations of injury resulting from a defendant's conduct may suffice"; in

responding "to a summary judgment motion, however, the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." *Id.* at 561, 112 S. Ct. at 2137 (citations and internal quotation marks omitted).

At its core, Article III standing requires the existence of injury, not ownership. *See Via Mat Int'l S. Am. Ltd. v. United States*, 446 F.3d 1258, 1262 (11th Cir. 2006). "A claimant need not own the property in order to have standing to contest its forfeiture; a lesser property interest, such as a possessory interest, is sufficient for standing." *United States v. $38,000.00 in U.S. Currency*, 816 F.2d 1538, 1544 (11th Cir. 1987). We have explained "[o]wnership of property that has been seized can be evidence of the existence of an injury that is direct enough to confer standing." *Via Mat Int'l S. Am. Ltd.*, 446 F.3d at 1262. "The economic harm to a party with a possessory interest in seized property, imposed by virtue of its liability to the owner of such property, can constitute a palpable injury sufficient to confer standing under Article III." *Id.* at 1263. Nevertheless, "straw owners and persons who might have unknowingly been in possession of property that is seized do not necessarily suffer an injury that is sufficient to demonstrate standing." *Id.* at 1262 n.5 (internal quotation marks omitted). Likewise, a person found to be acting as a nominee for others whose property is subject to forfeiture cannot have a vested

interest in the property. *Weiss*, 467 F.3d at 1303 n.1. "Nominee connotes the delegation of authority to the nominee in a representative or nominal capacity only, and does not connote the transfer or assignment to the nominee of any property in, or ownership of, the rights of the person nominating him." *Id.* (citation and internal quotation marks omitted).

We have explained district judges "*cannot* decide disputed factual questions or make findings of credibility essential to the question of standing on the paper record alone but *must* hold an evidentiary hearing." *Bischoff v. Osceola Cnty., Fla.*, 222 F.3d 874, 879 (11th Cir. 2000); *see also id.* at 881-82 (determining the district judge improperly weighed conflicting affidavits to determine the plaintiffs lacked standing). Instead, "a district court should resolve disputed factual issues either at a pretrial evidentiary hearing or at trial." *Id.* at 879.

State law determines the nature of a claimant's interest in forfeited property. *See Shefton*, 548 F.3d at 1364 (applying state law to determine the nature of a claimant's interest in forfeited property for § 853(n)(6)(A) purposes). In Georgia, a certificate of title to a vehicle is prima facie evidence of the facts appearing on it. O.C.G.A. § 40-3-24(c). Consequently, "[t]he certificate is not the title or ownership itself but only evidence of it." *Owensboro Nat'l Bank v. Jenkins*, 328 S.E.2d 399, 402 (Ga. Ct. App. 1985). "A cardinal precept of corporate law is that corporations are separate entities from their shareholders, officers, directors, and

8

employees," even when the "corporation is owned solely by one person." *Dep't of Transp. v. McMeans*, 754 S.E.2d 61, 63 (Ga. 2014).

The record in this case contains conflicting evidence, which the district judge weighed to determine Nugen lacked Article III standing. On one hand, Nugen holds title to the Audi, which is prima facie evidence Nugen owns it. *See Via Mat Int'l S. Am. Ltd.*, 446 F.3d at 1262 (explaining ownership interest in property can be evidence of injury sufficient to confer standing); *Jenkins*, 328 S.E.2d at 402. On the other hand, (1) the bill of sale lists Hue, rather than Nugen, as purchaser of the Audi; (2) Hue testified at his deposition he did not think about why he titled the Audi in Nugen's name; and (3) the Audi also was insured in Hue's name. *See McMeans*, 754 S.E.2d at 63. While the district judge did not make a credibility determination, he improperly "weigh[ed] the evidence and determine[d] the truth of the matter" and concluded the contradictory evidence rebutted Nugen's prima facie evidence of ownership. *See Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511; *Bischoff*, 222 F.3d at 879.

Although this is a close case, on balance, we conclude Nugen provided sufficient evidence of an ownership interest in the Audi and injury resulting from its forfeiture to confer standing, at least at the summary judgment stage. *See Lujan*, 504 U.S. at 560-61, 112 S. Ct. at 2136; *Via Mat Int'l S. Am. Ltd.*, 446 F.3d at 1262-63. Nugen supported its claim of ownership with citation to specific

record evidence, the certificate of title.  *See Lujan*, 504 U.S. at 560-61, 112 S. Ct. at 2136.  Moreover, Hue did not specify whether Henry had agreed to make the monthly payments to Hue personally or to Nugen.  The best reading of Hue's deposition testimony is Henry agreed to make his monthly payments to Hue personally, because Hue paid for the Audi with personal funds; nevertheless, his deposition testimony does not foreclose the possibility Nugen received the payments.

There is at least some support in the record for Nugen's assertions it owned the Audi and suffered an economic injury, because of forfeiture of the Audi. Therefore, we conclude Nugen made a sufficient showing of injury at the summary judgment stage to confer Article III standing.  *See Lujan*, 504 U.S. at 560-61, 112 S. Ct. at 2136; *Via Mat Int'l S. Am. Ltd.*, 446 F.3d at 1262-63.

B.    Timeliness of Nugen's Statutory Claim

The government argues Nugen's superior-interest theory under 21 U.S.C. § 853(n)(6)(A) is time-barred.  It contends Nugen failed to mention the superior-interest theory in its timely § 853(n) petition, and the fact on which the theory was based, Nugen's alleged unwritten agreement with Henry, was not mentioned until after the statutory 30-day period in which to file a factually accurate petition had expired.  Nugen notes it asserted in its initial timely § 853(n) petition it had acquired legal title to the Audi, and Henry had not.

A third party asserting a legal interest in property subject to forfeiture may petition the district judge for a hearing to adjudicate the validity of its alleged interest.  21 U.S.C. § 853(n)(2).  The petition must "set forth the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, any additional facts supporting the petitioner's claim, and the relief sought."  *Id.* § 853(n)(3).

Under § 853(n)(6), a claimant may assert it has a right, title, or interest in the property that renders the forfeiture order invalid because the claimant's legal right, title, or interest in the property is (1) vested in the petitioner, rather than the defendant, or (2) superior to the defendant's right, title, or interest.  *See* 21 U.S.C. § 853(n)(6)(A).  Alternatively, the claimant may assert it is a bona fide purchaser for value of the right, title, or interest in the property.  *See id.* § 853(n)(6)(B).

In *United States v. Soreide*, 461 F.3d 1351, 1352-53 (11th Cir. 2006), petitioner Lynn Soreide, ex-wife of the criminal defendant, filed two timely § 853(n)(2) petitions, both of which recounted the facts of her purchases of the subject properties and asserted she was a bona fide purchaser for value of right, title, or interest in them.  *See id.* at 1352-53, 1355.  In response to the government's summary judgment motion three months later, Soreide asserted for the first time she had held an interest in one of the properties superior to her ex-husband's

11

interest in the property. *Id.* at 1353, 1355. The district judge addressed the arguments in a summary judgment order and found them to be meritless. *Id.* at 1355. On appeal, we determined Soreide's superior-interest theory was asserted untimely, because it appeared in neither of her two timely § 853(n) petitions; instead, it first appeared in her response to the government's summary judgment motion. *Id.* We explained we would not disturb a district judge's summary judgment denying relief in a § 853(n) ancillary proceeding, where the claimant did not present her theory of ownership timely as required under § 853(n)(2) and (3): "We will not vacate the summary judgment nor provide relief from the final order of forfeiture based upon a claim that was not asserted as required by the statute." *Id*.

Notably, the factual nature of Nugen's claim had evolved from its § 853(n) petition to summary judgment. In its timely § 853(n) petition, Nugen stated (1) it was a bona fide purchaser of the Audi; (2) it was the titled owner of the Audi; (3) it had acquired title on July 13, 2010, after purchasing the Audi from Triple M; and (4) Henry never had purchased the Audi or obtained any right, title, or interest in the Audi. On summary judgment, Nugen stated (1) it had purchased the Audi using business funds, and (2) Henry had entered into an unwritten agreement to purchase the Audi from Nugen, or Hue, taken possession of the Audi, and had begun making payments under that agreement.

12

Although Nugen omitted important supporting facts from its timely § 853(n) petition and changed its position regarding the nature of its interest in the Audi, this case is distinguishable from *Soreide*.  Nugen's petition asserted theories under both § 853(n)(6)(A) (the superior-interest provision) and § 853(n)(6)(B) (the bona fide-purchaser provision), because Nugen stated (1) it held the title to the Audi, and Henry had no right, title, or interest in the Audi, and (2) it was a bona fide purchaser of the Audi.  Unlike Soreide, Nugen did not switch from asserting only a claim under § 853(n)(6)(B) (the bona fide-purchaser provision) in its timely § 853(n) petition to asserting a belated claim under § 853(n)(6)(A) (the superior-interest provision).  *See Soreide*, 461 F.3d at 1355.  Consequently, we decline to deem Nugen's § 853(n)(6)(A) theory untimely or improperly raised.

C.    Nugen's Superior-Interest Theory

Nugen argues (1) its legal interest in the Audi arose from acquiring title, and (2) Henry's payments went toward leasing or using the Audi, but (3) Henry never acquired any interest in the Audi, because he failed to make all payments under the verbal agreement with Nugen.[1]  The government responds Nugen has, if anything, an unperfected security interest in the Audi, which is insufficient to establish statutory standing.

---

[1]  Nugen does not argue on appeal it is a bona fide purchaser under § 853(n)(6)(B); therefore, it has abandoned that claim.  *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[T]he law is by now well settled in this Circuit that a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

13

Anyone other than the defendant asserting an interest in property subject to a § 853 forfeiture may petition the court to adjudicate the validity of his alleged interest in the property. 21 U.S.C. § 853(n)(2). The court must amend the forfeiture order appropriately:

> (6)  If, after [a] hearing, the court determines that the petitioner has established by a preponderance of the evidence that–
>
>> (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section.

*Id.* § 853(n)(6)(A). Although state law determines the nature of a claimant's interest in property subject to criminal forfeiture, federal law determines whether the claimant's interest in the property "is superior and thus renders the forfeiture order invalid under § 853(n)(6)." *Shefton*, 548 F.3d at 1364.

The record is too unclear at this stage of the proceedings to determine what interest, if any, Nugen has in the Audi and whether Nugen's interest would be sufficient to prevail under § 853(n)(6)(A) as a superior interest. We note, however, in determining Nugen lacked statutory standing, the district judge first concluded that, if Nugen had any interest in the Audi, it had an unperfected-security interest.

14

Citing state law, the judge determined an unperfected-security interest was insufficient to challenge the government's vested interest in the Audi. The judge's reliance on state law to resolve what amounted to a determination Nugen could not prevail under § 853(n)(6)(A) was improper, because federal law determines whether a claimant's interest renders the forfeiture order invalid. *See id.*

D.    Relation-Back Doctrine

The government argues Nugen could not prevail, even if it had an interest in the Audi sufficient to satisfy statutory standing because, under the relation-back doctrine of § 853(c), the government's interest relates back to the beginning of the drug conspiracy in February 2010. Because Nugen obtained any interest it had in the Audi after Henry had obtained proceeds from his drug conspiracy, the government contends Nugen cannot overcome § 853(c).

Property "used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of" the underlying criminal offense is subject to forfeiture. 21 U.S.C. § 853(a). "All right, title, and interest in property described in subsection (a) of this section vests in the United States upon the commission of the act giving rise to forfeiture under this section." *Id.* § 853(c). The language in § 853(c) is similar to the language in § 853(n)(6)(A), which provides a forfeiture order will be rendered invalid, in whole or in part, if "the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title,

15

or interest of the defendant *at the time of the commission of the acts which gave rise to the forfeiture of the property* under this section." *See id.* § 853(n)(6)(A) (emphasis added).

While we have not addressed this issue previously, our decision in *United States v. Kennedy*, 201 F.3d 1324 (11th Cir. 2000), applying § 853(n)(6)(A), aids our resolution of this case. In *Kennedy*, Byron Kennedy ("Byron"), the defendant in the underlying criminal case, perpetrated a mail-fraud scheme beginning in 1984. *Kennedy*, 201 F.3d at 1325-26. In 1989, Byron and his then-wife, Verness Kennedy ("Verness"), purchased a house together. *Id.* at 1327. Byron paid the $50,000 earnest-money deposit, along with $134,445.05 at closing with proceeds from his fraud; he falsely told Verness he had borrowed the money from his business. *Id.* Verness later repaid Byron a total of $180,000, in accordance with a prior agreement between them. *Id.* at 1328. After Byron was indicted, Verness filed for divorce in early 1995. *Id.* In September 1995, the state entered a divorce decree and awarded the house to Verness. *Id.* In November 1995, the district judge determined Byron's interest in the house was subject to forfeiture. *Id.* Verness filed a § 853(n) petition; the district judge concluded she was entitled to Byron's interest under a § 853(n)(6)(A), superior-interest theory, based on the divorce decree. *Id.* at 1331. We rejected that conclusion and explained the acts

16

giving rise to the forfeiture took place in June 1989, when Kennedy used ill-gotten money as an earnest-money deposit. *Id.*

The government's argument its interest in the Audi vested at the start of the drug conspiracy misapplies the phrase "upon the commission of the act giving rise to forfeiture under this section." *See* 21 U.S.C. § 853(c). The acts giving rise to the forfeiture in this case were not the beginning of the drug conspiracy in February 2010 but Henry's payment for the Audi using ill-gotten funds. *See Kennedy*, 201 F.3d at 1331 (explaining, for § 853(n)(6)(A) purposes, "[t]he acts which gave rise to the forfeiture" in that case were Byron's use of ill-gotten money toward the purchase of a house).

While we are unpersuaded by the government's argument, we cannot at this stage of the proceedings determine whether the relation-back doctrine of § 853(c) makes a difference. The record shows Nugen may have obtained its interest in the Audi before Henry, because (1) the certificate of title purports to show Nugen to be the owner of the Audi as of July 13, 2010, and (2) Hue testified Henry paid him $6,000 to $7,000 for the Audi beginning in June or July of 2010. It is unclear, however, whether Henry began making payments before or after Nugen purportedly became owner of the Audi and whether those payments were made to Hue personally or to Nugen. With this ambiguity in the record, we cannot determine how § 853(c) applies in this case. Therefore, we vacate the summary

17

judgment and remand this case to the district judge with instructions to conduct a hearing under § 853(n) to determine (1) whether Nugen had any interest in the Audi; (2) if so, what its interest was; and (3) whether Nugen's interest in the Audi, if any, was sufficient to prevail under § 853(n)(6)(A).[2]

**VACATED AND REMANDED WITH INSTRUCTIONS.**

---

[2] Because of our instruction for the district judge to conduct a § 853(n) hearing on whether Nugen has any interest in the Audi, we do not address Nugen's argument that only the $6,000 to $7,000 Henry paid toward the Audi is forfeitable.